**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1795
_____

SANG GOO PARK,
                    Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,
                    Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A097-848-626)
Immigration Judge:  Honorable Frederic G. Leeds
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 18, 2016

Before:  AMBRO, SHWARTZ, and FUENTES, *Circuit Judges*

(Opinion filed: January 17, 2017)

David K. S. Kim, Esq.
Law Office of David K. S. Kim, P.C.
193-08 Northern Boulevard
Flushing, NY 11358

*Counsel for Petitioner*

Claire Workman, Esq.
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

*Counsel for Respondent*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

Petitioner Sang Goo Park, a citizen of South Korea, was ordered removed in 2009, in part for submitting fraudulent documents in support of his visa application. He now claims that, in the years since the removal order, he has become eligible for a "§ 212(i)" waiver of inadmissibility. He would like the Board of Immigration Appeals ("BIA" or "Board") to reopen his removal proceedings so that he might apply for the waiver, but he faces an imposing obstacle. Because of the passage of time, his only route to reopening lies through 8 C.F.R. § 1003.2(a), commonly known as the "*sua sponte*" reopening provision. Under that regulation, the

2

BIA may reopen a case at any time. The BIA has held, however, that it will do so only in extraordinary circumstances. As a result, the BIA's discretion in this area is broad—so broad, in fact, that we have no meaningful way to review it, thereby depriving us of jurisdiction over orders denying *sua sponte* reopening.

Park's petition invokes one of the limited exceptions to the rule against review. He argues, as he did before the agency, that the BIA has consistently reopened *sua sponte* for aliens like him who have become eligible for relief from removal after their cases have ended. By ruling consistently in this way, Park contends, the BIA has established a rule or "settled course of adjudication" that it is now bound to follow, or at least from which the BIA may not depart without explaining itself. Park also points to our two precedential opinions interpreting this "settled course" exception, *Chehazeh v. Att'y Gen.* and *Cruz v. Att'y Gen.*,[1] as weighing in favor of our ability to review the BIA's decision.

Park's petition gives us an opportunity to clarify our jurisprudence surrounding the "settled course" exception, which originated over a decade ago but has existed since without a framework. In part, this requires us to interpret *Chehazeh* and *Cruz*, which Park reads as being broader than they actually are (a mistake he is not alone in making).

Under the "settled course" framework we establish below, Park neither shows nor allows us to reasonably infer that the BIA has constrained its discretion in a way that would allow our review of its decision denying *sua sponte* reopening. His other arguments in favor of exercising

---

[1] 666 F.3d 118 (3d Cir. 2012); 452 F.3d 240 (3d Cir. 2006).

jurisdiction are unavailing. Thus, we will dismiss his petition for lack of jurisdiction.

## **I. Background**

a) Entry, Accusations of Fraud, and Immigration Removal Proceedings

Park entered the United States on a visitor's visa in 1999.[2] Some years later, he applied for an adjustment of status based on an approved immigrant petition from his employer. During the adjustment process, authorities discovered that Park, a cook, had said on his visa application that he had been employed at an electronics company—a falsehood. Charged with being inadmissible due to fraud (which he contested) and for overstaying the visa (which he conceded), Park insisted that he was unaware of the information in the application that misstated his employment. Park did not otherwise apply for relief from removal; at the time, he was not eligible for a § 212(i) waiver of inadmissibility because he lacked a qualifying relative.[3]

In the end, the presiding Immigration Judge sustained the fraud charge and ordered Park deported to South Korea. The BIA dismissed his appeal, and we denied his petition for review.[4]

---

[2] Park's immigration case was originally consolidated with his wife's and child's, but as Park is our only petitioner, we will focus on him alone for simplicity's sake.

[3] *See* 8 U.S.C. § 1182(i)(1).

[4] *See Park v. Att'y Gen.*, 371 F. App'x 343, 345 (3d Cir. 2010) (per curiam).

4

About two and a half years later, Park filed his first BIA motion requesting *sua sponte* reopening. Through new counsel, Park argued, in essence, that apparent inconsistencies in his testimony about whether he had signed the visa documents were due to a flawed translation from Korean into English. The BIA declined to reopen Park's case, and we dismissed his second petition for review for lack of jurisdiction.[5]

b) Park's Second, Current Motion to Reopen *Sua Sponte*

This brings us to the present. In January 2016, Park filed a second motion to reopen his removal proceedings *sua sponte*, this one premised on his new eligibility for a § 212(i) waiver of inadmissibility. He asserted that his parents, now permanent residents of the United States (and, thus, potential qualifying relatives for the waiver), would suffer great hardship if he were removed. Park explained that they reside near him in New Jersey, depend on him financially, and suffer from mental distress (such as depression and even suicidal ideation) associated with his immigration situation. Tying these threads together, he argued in his motion that the BIA "has generally reopened proceedings *sua sponte* and remanded to the IJ, where . . . [an alien] became eligible for relief from removal subsequent to the final order of removal, and/or either the DHS does not oppose the motion or other positive factors" are present, citing a series of unpublished BIA cases in support.[6]

---

[5] *See Park v. Att'y Gen.*, 560 F. App'x 154, 155–57 (3d Cir. 2014) (per curiam).

[6] Administrative Record ("A.R.") 22.

5

The BIA denied Park's motion in a short decision. After noting that Park had already filed the one motion to reopen authorized by law and had otherwise filed beyond the applicable deadline, the BIA briefly addressed *sua sponte* reopening: "Based on the totality of circumstances presented, we do not find . . . an exceptional situation that would warrant the Board's exercise of its discretion to reopen sua sponte."[7]

c) <u>Park's Current Petition for Review</u>

In his petition, Park argues primarily that the BIA has impermissibly departed from a consistent pattern of administrative decisions rendered in similar cases. Through this settled course and pattern, he argues, the BIA has constrained its discretion such that we may exercise jurisdiction and review it for abuse. To support this route to our jurisdiction, he relies again on a series of unpublished BIA cases, about ten in all—although not the same decisions he relied on before the Board.

Park also raises secondary but related arguments for how we might properly find jurisdiction. For instance, he reads our opinions in *Chehazeh*[8] and *Cruz*[9]—the two prior precedential opinions in which we invoked the "settled course" exception—as granting us jurisdiction over orders denying *sua sponte* reopening for lack of exceptional situations or circumstances. Park asks us to find, once we have asserted jurisdiction, that the BIA's decision was an abuse of its broad discretion, and to "remand to the Board with instructions to reopen the proceedings" so that his

---

[7] A.R. 3.

[8] 666 F.3d 118 (3d Cir. 2012).

[9] 452 F.3d 240 (3d Cir. 2006).

eligibility for the § 212(i) waiver can be fully considered.[10]

## II. Legal Background of *Sua Sponte* Reopening[11]

We begin with a quick summary of the statutory and regulatory scheme and then move to a discussion of *sua sponte* reopening. Since we have not previously developed a framework to guide the "settled course" exception, we do so below.

a) Motions to Reopen in the BIA; Our Jurisdiction in General

An alien has the right under statute and regulation to file a single motion to reopen his or her removal proceedings, subject to certain limitations (and exceptions to those limitations) that are not relevant here.[12] We ordinarily have jurisdiction to review the BIA's denial of such a motion, conducting a "highly deferential" review for abuse of discretion; the BIA's decision is not disturbed unless found to

---

[10] Park Br. 29.

[11] What follows is primarily about our jurisdiction in the context of *sua sponte* reopening. Yet Park ultimately wants a § 212(i) waiver of inadmissibility, and we generally lack jurisdiction to review agency decisions regarding a § 212(i) waiver. *See* 8 U.S.C. §§ 1182(i)(2), 1252(a)(2)(B)(i). Because the agency never addressed the discretionary merits of Park's request for a waiver, it is likely that our jurisdiction here (if otherwise found to exist) would be unaffected. *See Mazariegos v. Lynch*, 790 F.3d 280, 285 (1st Cir. 2015).

[12] *See* 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(c); *Prestol Espinal v. Att'y Gen.*, 653 F.3d 213, 215–17 (3d Cir. 2011).

be "arbitrary, irrational, or contrary to law."[13]  As always, we are limited in our review to "the rationale that the agency provides."[14]

b) The BIA May Reopen *Sua Sponte* in Extraordinary Circumstances

Section 1003.2(a) of the immigration regulations contains a catch-all provision not found in the statute: even when an alien might otherwise be ineligible to reopen his or her case, the BIA may nevertheless "at any time reopen or reconsider on its own motion any case in which it has rendered a decision."  Because the regulation speaks of the BIA acting "on its own motion," this catch-all is known as *sua sponte* reopening—although since an alien usually has to ask the BIA to act, and in a written request at that, the label is technically inapt.[15]

Section 1003.2(a) does not say what standard the BIA is to apply in deciding *sua sponte* requests to reopen.  Rather, it says simply that decisions are "within the discretion of the Board," which has the discretion to deny a motion "even if the party moving has made out a *prima facie* case for relief."  In interpreting the scope of its authority under this regulation and its predecessor, the BIA has clarified that it will exercise its discretion to reopen "sparingly" and in "exceptional

---

[13] *Alzaarir v. Att'y Gen.*, 639 F.3d 86, 89 (3d Cir. 2011).

[14] *Konan v. Att'y Gen.*, 432 F.3d 497, 501 (3d Cir. 2005).

[15] *See Cordova-Soto v. Holder*, 732 F.3d 789, 791 (7th Cir. 2013) ("A request for *sua sponte* reopening is an oxymoron, but the odd concept seems to be well entrenched in immigration law.").

situations" only, and will not use *sua sponte* reopening as a "general remedy for any hardships created by enforcement of the time and number limits in the motions regulations."[16] However, while the BIA "must be persuaded that the . . . situation is truly exceptional before [it] will intervene,"[17] the presence of an exceptional situation does not compel it to act; the BIA may still decide against reopening.[18]

    c) Because the BIA's Discretion is Near Absolute, We Generally Lack Jurisdiction to Review Its Decisions Denying *Sua Sponte* Reopening

Over a decade ago, in *Calle-Vujiles v. Ashcroft*,[19] we held that orders by the BIA declining to exercise its discretion to reopen *sua sponte* are functionally unreviewable, unlike other orders on immigration motions to reopen. Relying on the Supreme Court's decision in *Heckler v. Chaney*,[20] we explained that because the BIA's discretion is essentially unlimited, we lacked a "meaningful standard . . . against which to judge the [BIA's] exercise of [its] discretion."[21] Under the teachings of *Heckler*, this left us unable to exercise jurisdiction despite the general presumption in favor of judicial review of agency decisions.[22] Other courts have

---

[16] *In re G-D-*, 22 I. & N. Dec. 1132, 1133–34 (BIA 1999).

[17] *Id.* at 1134.

[18] *See Cruz*, 452 F.3d at 249; *Ekimian v. INS*, 303 F.3d 1153, 1158 (9th Cir. 2002).

[19] 320 F.3d 472 (3d Cir. 2003).

[20] 470 U.S. 821 (1985).

[21] *Calle-Vujiles,* 320 F.3d at 474 (quoting *Heckler*, 470 U.S. at 830).

[22] *Id.* at 474–75.

reached substantially the same conclusion.[23]

    d) <u>Development of Exceptions to the Rule Against Review</u>

We have developed two exceptions to our rule against review, and while Park invokes only one directly, discussion of both helps to illuminate the kinds of decisions we have and have not ruled to be within our jurisdiction.

    1) *The First Exception: We Can Review the BIA's Reliance on an Incorrect Legal Premise*

The first exception arises when the BIA relies on an incorrect legal premise in denying a motion to reopen *sua sponte*. In *Pllumi v. Att'y Gen.*, we held that we may exercise jurisdiction in those cases and remand to the BIA so that it may exercise its *sua sponte* authority under the correct legal framework.[24]

    2) *The Second Exception: We Can Review the BIA's Decision When the BIA Has*

---

[23] *See Peralta v. Holder*, 567 F.3d 31, 34 (1st Cir. 2009) (collecting cases); *Tamenut v. Mukasey*, 521 F.3d 1000, 1004 (8th Cir. 2008) (en banc) (per curiam) (collecting cases). The Supreme Court has declined to reach the question. *See Kucana v. Holder*, 558 U.S. 233, 251 n.18 (2010).

[24] 642 F.3d 155, 160 (3d Cir. 2011). As the Ninth Circuit recently observed, "no circuit squarely presented with this issue has held to the contrary," although the Eighth has "expressed some skepticism." *Bonilla v. Lynch*, 840 F.3d 575, 589 & n.10 (9th Cir. 2016).

*Constrained Its Discretion through Rule or Settled Course of Adjudication*

### i) The Origin of the Exception

The roots of the second exception are found in *Calle-Vujiles* itself. In the midst of discussing our lack of jurisdiction in that case, we wrote: "It is true that if an agency announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, that exercise may be reviewed for abuse."[25] In so stating, we were borrowing secondhand from the Supreme Court's 1996 decision in *INS v. Yang*,[26] in which the Court explained—in the context of the BIA's denial of a waiver—that unfettered agency discretion could be narrowed by settled practice to the point where an irrational departure from that practice might constitute abuse.[27]

Although *Calle-Vujiles* recognized the possibility of an exception, our observation there was simply an aside. There was no "settled practice" argued by the parties and, as a result, we did not say anything more about this possible exception to our rule against review, such as what might

---

[25] *Calle-Vujiles*, 320 F.3d at 475 (internal quotation marks and citation omitted). We note that *Calle-Vujiles* is generally cited by other courts for its proscription on jurisdiction, not its recognition of an exception. *See, e.g.*, *Barry v. Mukasey*, 524 F.3d 721, 723 (6th Cir. 2008); *Ali v. Gonzales*, 448 F.3d 515, 518 (2d Cir. 2006).

[26] 519 U.S. 26 (1996).

[27] *See id.* at 31–32.

suffice to invoke it.

> ii) <u>We Reaffirm the Settled Course Exception in *Chehazeh* and *Cruz*</u>

Despite its origin in dicta, the "settled course" exception to the rule against *sua sponte* review has twice arisen in precedential opinions since *Calle-Vujiles*, both times in complex cases where it was far from the only moving part. While neither decision sets out a precise framework for how to evaluate the presence of a "settled course," the opinions are nevertheless instructive on what kinds of BIA decisions we have found to be within our ambit of review. Moreover, both opinions reaffirm the basic principle recognized in *Calle-Vujiles*: we have jurisdiction if the BIA's discretion is bounded.[28]

In the more-recent of the two cases, *Chehazeh v. Att'y Gen.*,[29] we recognized that while the BIA's discretion to deny *sua sponte* reopening was indeed unfettered, its discretion to *grant* reopening—which it did in *Chehazeh* to the detriment of the alien—was not. "[B]ecause the BIA has announced

---

[28] This principle is a natural corollary to the general presumption in favor of judicial review of agency action. *See, e.g.*, *Kucana*, 558 U.S. at 251–52 (discussing the presumption); *Jahjaga v. Att'y Gen.*, 512 F.3d 80, 82 (3d Cir. 2008) (same).

[29] 666 F.3d 118 (3d Cir. 2012). *Chehazeh* arose not from a petition for review, but from an Administrative Procedure Act challenge. *See id.* at 121. The different posture of *Chehazeh* does not appear to be a point of distinction, at least for our decision today.

and followed a general policy that it will exercise its discretion to reopen only in exceptional situations," we wrote, "we may review a decision to reopen to determine whether it was based upon an exceptional situation."[30]

In the earlier of the two cases, *Cruz v. Att'y Gen.*,[31] the BIA's order denying reopening failed to mention that the alien's criminal conviction, which was the sole ground of removability, had been vacated. Instead, the BIA summarily denied reopening as time-barred and found *sua sponte* action unwarranted "for any reason."[32] Observing that both our precedent and the BIA's own precedent suggested that petitioner Cruz was no longer removable, we decided in part that the BIA's cursory order left the basis for its decision unclear. Had the BIA in fact considered and rejected Cruz's arguments or had it done something entirely different? As we can review only the rationale the BIA provides for its decision, this ambiguity created an untenable "jurisdictional conundrum."[33] Although we did not ultimately decide whether the BIA actually had established a general policy of reopening in cases like Cruz's, we found jurisdiction and remanded for the BIA to at least "explain logically its unwillingness to" reopen Cruz's case.[34]

---

[30] *Id.* at 129.

[31] 452 F.3d 240 (3d Cir. 2006).

[32] *Id.* at 244–45.

[33] *See id.* at 248–50.

[34] *Id.* at 250.

### iii) Our Nonprecedential Cases Inconsistently Apply the Settled Course Exception

While *Chehazeh* and *Cruz* are our sole precedential cases dealing with the settled course exception,[35] our nonprecedential cases have addressed it several times. Those decisions inconsistently locate the moment where a petitioner's allegation of a settled course of conduct suffices to transform an unreviewable BIA *sua sponte* decision into a reviewable one. The majority of them consider the sources identified by the petitioner *before* deciding whether the BIA has constrained its discretion and, thus, whether we have jurisdiction.[36] In others, however, we have suggested that the allegation of a pattern or settled course is itself sufficient to confer jurisdiction.[37]

---

[35] We appear to be the only Court of Appeals to recognize in a precedential decision a possible "settled course" exception in the context of *sua sponte* reopening. *But see Tamenut*, 521 F.3d at 1005 (citing to *Calle-Vujiles* and assuming, without deciding, that "a settled course of adjudication could establish a meaningful standard by which to measure the agency's future exercise of discretion").

[36] *See, e.g.*, *Lora-Gonzalez v. Att'y Gen.*, 632 F. App'x 678, 680 (3d Cir. 2015) (per curiam); *Dwumaah v. Att'y Gen.*, 628 F. App'x 121, 124 (3d Cir. 2015) (per curiam); *Zhou v. Att'y Gen.*, 429 F. App'x 120, 123 (3d Cir. 2011) (per curiam).

[37] *See, e.g.*, *Codner v. Att'y Gen.*, No. 16-1411, 2016 WL 4717941, at *2–3 (3d Cir. Sept. 9, 2016) (per curiam); *Sapon-Caniz v. Att'y Gen.*, 502 F. App'x 147, 152 (3d Cir. 2012) (per curiam).

e) Creating a Framework For the Settled Course Exception

We hold today that the approach taken by the majority of our nonprecedential cases is the correct one to follow, and informs the proper framework to use in "settled course" cases. It is our view that in order to invoke the "settled course" exception to our rule against review of orders denying *sua sponte* reopening requests, a petitioner must establish that the BIA has limited its discretion via a policy, rule, settled course of adjudication, or by some other method, such that the BIA's discretion can be meaningfully reviewed for abuse. The petitioner's showing must be persuasive enough to allow the reasonable inference that the BIA's discretion has in fact been limited. Our evaluation of the authorities marshaled by the petitioner logically precedes, rather than follows, a finding of jurisdiction to conduct abuse-of-discretion review—although we can of course refer to the BIA's decision from which the petition arises to determine whether it fits into the pattern alleged by the petitioner. This framework follows from our reasoning in *Calle-Vujiles*: agency discretion that has been limited is reviewable and is thus within our jurisdiction.[38]

The key words in the above formulation are "meaningfully" and "reasonable." A policy so broad as to merely redirect the BIA's discretion, rather than limit it, will probably be insufficient. The same goes for a "pattern" of dispositions whose contours are not clearly defined or which is not tailored to the petitioner's circumstances.

What happens after the petitioner has made this

---

[38] *Cf. Calle-Vujiles*, 320 F.3d at 474.

15

showing will depend on the circumstances of the particular case. We generally act, as we did in *Cruz*, as a final set of eyes. We ensure that the BIA has not incorrectly denied reopening to an alien who would ordinarily be entitled to it under the regular course of action, which might happen if the BIA overlooks the core of the alien's claim. This holds particularly true when the BIA has not explained the decision the petitioner seeks to challenge.

The government argues that to the extent BIA decisions can establish a policy, practice, or settled course of adjudication, only published, precedential BIA decisions should be considered. It is true that we assigned diminished weight to the legal reasoning in and the deference owed to unpublished BIA decisions.[39] But otherwise, on review, we treat the published and unpublished dispositions of the agency in the same way. Moreover, the Immigration and Nationality Act does not distinguish between the two kinds of BIA orders, and their effects do not meaningfully differ for the affected aliens.[40] There is no apparent administrative-law principle that removes unpublished, nonprecedential agency decisions from the reach of review for arbitrariness.

Moreover, both *Cruz* and *Chehazeh* suggested that the BIA's nonprecedential opinions have value in determining the agency's policies and practices. In *Cruz*, we used the BIA's nonprecedential decisions (which had not been relied upon by the petitioner) to note the possible existence of a broader

---

[39] *De Leon-Ochoa v. Att'y Gen.*, 622 F.3d 341, 350 (3d Cir. 2010).

[40] *Cf.* 8 U.S.C. § 1252(b)(4) (setting out scope and standard of review).

16

policy that, while not *established* by those decisions, was nevertheless being consistently interpreted or followed by them.[41] In *Chehazeh* we explained the difference between decisions denying reopening versus decisions granting reopening: the latter, whether published or unpublished, marked the boundaries of what the BIA considers to be "extraordinary" situations or circumstances warranting reopening.[42] And, outside of the context of *sua sponte* reopening, at least one other Court of Appeals has considered the agency's unpublished dispositions in determining the breadth of its settled course of adjudication.[43]

### III. Analysis

a) Park's Petition for Review under the Settled Course Framework

Having clarified our framework for review of Park's settled course claim, we ask whether he has allowed us to infer that the BIA has, in fact, constrained its discretion such that we may meaningfully review its decision for abuse. Park contends that the BIA has a "practice or pattern of reopening cases *sua sponte* where, as here, the petitioner becomes eligible for [] relief from removal for which he was not eligible in the original removal proceedings."[44]

We disagree with his premise. Of the decisions Park relies upon, only one strikes us as tailored appropriately to his situation: an order granting *sua sponte* reopening because the

---

[41] *See Cruz*, 452 F.3d at 246 n.3.
[42] *See Chehazeh*, 666 F.3d at 128–29.
[43] *See De Leon v. Holder*, 761 F.3d 336, 344 (4th Cir. 2014).
[44] Park Br. 24.

17

alien was now eligible for adjustment of status based on her marriage to a United States citizen.[45]   But one favorable exercise of discretion does not a settled course make. Moreover, our independent investigation does not reveal obvious consistency by the BIA in this area of its case law.[46]

In light of the above, Park has failed to show a meaningful restriction of the BIA's discretion with regard to similarly situated aliens.  Without a reasonable inference of such a limitation, we lack jurisdiction over the petition for review.

### b) *Chehazeh* and *Cruz* Do Not Grant Jurisdiction over Orders Denying Reopening for a Lack of Exceptional Circumstances

In the alternative, Park contends that our decisions in *Cruz* and *Chehazeh* broadened our jurisdiction to encompass any decision where, as here, the BIA denies *sua sponte* reopening because exceptional circumstances/situations are absent.[47]   He refers to a passage in *Cruz*, referenced in *Chehazeh*, where we wrote:

---

[45] *In re Shulum*, A73 549 194, 2003 WL 23270059, at *1 (BIA Oct. 22, 2003).

[46] *See, e.g.*, *In re Patel*, A096 441 533, 2012 WL 1495503, at *1 (BIA Apr. 3, 2012) (denying *sua sponte* reopening in similar situation).

[47] As the government points out, Park is not the first petitioner to premise a jurisdictional argument on this language.  *See* Gov't Br. 22–23 (discussing our unpublished, per curiam opinion in *Jabateh v. Att'y Gen.*, 431 F. App'x 90 (3d Cir. 2011), which rejected a similar argument).

18

> We cannot tell from its opinion whether the BIA concluded that Cruz made out a prima facie case for *sua sponte* relief based on his vacated conviction, but nevertheless exercised its unreviewable discretion under 8 C.F.R. § 1003.2(a) to decline to reopen, or whether it believed that Cruz had not shown an "exceptional situation," and was therefore ineligible because he failed to establish a prima facie case for *sua sponte* relief. *In the latter instance, we would have jurisdiction to review the BIA's decision.*[48]

If Park correctly reads *Cruz* and *Chehazeh*, those cases would amount to an almost wholesale inversion of our normal rule against review, because the BIA's common refrain in denying reopening is that the petitioner has failed to show exceptional circumstances.

Unsurprisingly, we do not think *Cruz* and *Chehazeh* brought about such a sweeping and unannounced change in our jurisprudence. For one, despite relying on the language from *Cruz* quoted above, *Chehazeh* made plain the distinction between BIA orders denying *sua sponte* reopening for lack of exceptional circumstances (unreviewable) and those granting them (reviewable).[49] For another, our discussion of exceptional circumstances in *Cruz* was tethered to a specific kind of "*prima facie*" case: a showing that an alien was no longer removable and thus had demonstrated his *prima facie* eligibility for relief from the underlying order of removal, as

---

[48] *Cruz*, 452 F.3d at 250 (emphasis added); *see also Chehazeh*, 666 F.3d at 130 (quoting *Cruz*).
[49] *See Chehazeh*, 666 F.3d at 129–30.

opposed to a showing of potential merit on a renewed or new application for relief.[50]  Neither *Cruz* nor *Chehazeh* grants us jurisdiction simply because the BIA invoked a lack of exceptional circumstances in denying a motion to *sua sponte* reopen.[51]

## IV. Conclusion

We hold that the "settled course" exception to our rule

---

[50] *See Cruz*, 452 F.3d at 249.

[51] Park suggests two final routes through which we might find jurisdiction.  They merit brief discussion.

First, Park appears to invoke the Supreme Court's decision in *Mata v. Lynch*, 135 S. Ct. 2150 (2015), as an independent ground through which we have jurisdiction.  He misreads *Mata*, which held in part that when the BIA denies a motion to reopen on both reviewable and non-reviewable grounds, courts should retain jurisdiction over the former even if the latter are beyond their reach.  *See id.* at 2155.  Since Park challenged only the denial of *sua sponte* relief in his opening brief, this distinction is irrelevant.

Second, while Park cursorily raises a due process claim in the introductory sections of his brief and then again in his argument summary, it is presented in the body of the argument as an abuse-of-discretion claim.  To the extent that a constitutional claim of this sort could independently confer jurisdiction through 8 U.S.C. § 1252(a)(2)(D)—the government argues that it cannot, *see* Gov't Br. 28 n.4—the claim here is not colorable.  *See Pareja v. Att'y Gen.*, 615 F.3d 180, 186–87 (3d Cir. 2010) (explaining that review is limited to colorable constitutional and legal claims).

20

against review of BIA orders denying *sua sponte* reopening can be invoked by showing that the BIA has meaningfully limited its discretion so as to allow our review. The unpublished BIA cases cited by *Park* do not lead to the reasonable inference that the BIA has done so here. For these and other reasons, we lack jurisdiction over Park's petition for review. It will be dismissed.