NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1857
_____

JORGE ROSENDO DE JESUS, AKA Jorge Luis Benancio-Collas,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(Agency No. A200-021-485)
Immigration Judge:  Honorable John B. Carle
_____

Submitted Under Third Circuit LAR 34.1(a)
October 30, 2018

Before:  CHAGARES, JORDAN, and VANASKIE, *Circuit Judges.*

(Filed: November 28, 2018)
_____

OPINION[*]
_____

JORDAN, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full court and, under I.O.P. 5.7, does not constitute binding precedent.

Jorge Rosendo De Jesus petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal from the denial of his motion to reopen an *in absentia* removal order. For the reasons that follow, we will deny the petition in part and dismiss it in part.

## I.   BACKGROUND

De Jesus entered the United States from Mexico without inspection in April 2006. Almost immediately thereafter, on May 5, 2006, he was detained during a traffic stop and transferred to the custody of Immigration and Customs Enforcement ("ICE") officials. De Jesus admitted that he was a native and citizen of Mexico and in the United States illegally.[1] He was personally served with a Notice to Appear ("NTA") and then released from custody.

The NTA charged "Jorge ROSENDO DE JESUS," alien number A200-021-485, with being removable as an alien present in the United States without being admitted or paroled. It listed De Jesus's address as the ICE facility where he was being detained. It also ordered him to appear before an Immigration Judge ("IJ") in Pittsburgh, Pennsylvania, on November 6, 2006 at 1:00 pm and described the allegations against him, including that he is a native and citizen of Mexico. The NTA went on to warn that if De Jesus moved and failed to provide a new mailing address, the government would be relieved of its obligation to provide further written notice concerning his hearing and that a failure to attend his hearing could result in a removal order being entered in his absence. The Certificate of Service in De Jesus's alien file specifies that, when he was

_____

[1] De Jesus disputes that he is a native and citizen of Mexico.

2

given the NTA, he was provided oral notice in Spanish of the "time and place" of his immigration hearing "and of the consequences of failure to appear." (App. at 135.) De Jesus apparently signed the Certificate of Service, acknowledging personal service. So did an immigration officer.

In August 2006, a Notice of Hearing in Removal Proceedings was mailed to De Jesus at the ICE facility listed on the NTA. The Notice of Hearing listed an incorrect alien number, A00-021-485, mistakenly dropping the "2" that should have followed "A." De Jesus failed to appear at his immigration hearing on November 6, 2006. Nevertheless, an IJ ordered him removed to Mexico. The removal order listed the same incorrect alien number for De Jesus.

De Jesus did not leave the country. Over a decade later, his mother, an American citizen, filed a Form I-130 Petition for Alien Relative on his behalf. De Jesus then moved to reopen his case and rescind the removal order. His motion included an affidavit challenging fundamental facts related to that order. For example, De Jesus stated that he is from Peru, not Mexico; that his alien number is A200-021-485, not A00-21-485; and that he did not receive notice of his removal hearing. He signed the affidavit "Rosendo De Jesus, Jorge A/K/A Benancio-Collas, Jorge Luis." He also provided a copy of a passport and other documents purporting to show that he is a native and citizen of Peru named Jorge Luis Benancio-Collas.

The IJ denied De Jesus's motion to reopen, and the BIA in turn denied the timely appeal of that decision. It gave several reasons for its ruling. First, in keeping with the IJ's conclusion, it said that De Jesus was "properly advised, provided a copy of the NTA,

3

and did not appear at the hearing." (App. at 7.) Second, it determined that the listing of an incorrect alien number in the Notice of Hearing and again in the IJ's removal order amounted only to *de minimis* errors that did not prevent De Jesus from attending his hearing or providing the immigration court with his proper address. Third, the BIA concluded that reopening the case to await the outcome of De Jesus's mother's I-130 petition was not warranted because De Jesus had failed to provide prima facie evidence of eligibility for adjustment of status. Finally, the BIA agreed with the IJ that the pending I-130 petition did not warrant *sua sponte* reopening of the case.

De Jesus has timely petitioned for review.

## II.    DISCUSSION[2]

De Jesus argues that the BIA abused its discretion in finding that he received proper notice of his removal proceedings, in finding that the errors contained in the NTA were *de minimis*, and by refusing to reopen his case *sua sponte*. We disagree.

First, De Jesus contends that he did not receive proper notice of his removal proceedings or of the consequences of failing to appear, and that the BIA abused its discretion in finding that he did. That argument is unavailing. Under the Immigration and Nationality Act, an alien is entitled to notice of certain information before removal

---

[2] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b). We have jurisdiction pursuant to 8 U.S.C. § 1252. In immigration cases, we review the denial of a motion to reopen for abuse of discretion. *Ramos-Oliveri v. Att'y Gen.*, 624 F.3d 622, 625 (3d Cir. 2010). We give the BIA's decision broad deference and generally do not disturb it unless it is "arbitrary, irrational, or contrary to law." *Filja v. Gonzales*, 447 F.3d 241, 251 (3d Cir. 2006) (citation and quotation marks omitted). We review factual determinations for substantial evidence and legal questions de novo. *Borges v. Gonzalez*, 402 F.3d 398, 404 (3d Cir. 2005).

4

proceedings commence. 8 U.S.C. § 1229(a)(1). Among them is the "time and place at which the proceedings will be held." *Id.* at § 1229(a)(1)(G)(i); *see also Pereira v. Sessions*, 138 S. Ct. 2105, 2113-14 (2018) ("A putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a notice to appear under section 1229(a)…." (internal quotation marks omitted)). Notice can be made effective either by personal service or service by mail. 8 U.S.C. § 1229(a)(1)-(2). An alien may file a motion to reopen his case at any time if that motion shows such notice was ineffective. *Id.* § 1229a(b)(5)(C)(ii). Here, substantial evidence supports the BIA's factual determination that De Jesus was personally served with the requisite notice, notwithstanding De Jesus's affidavit to the contrary.

As the BIA noted, and as De Jesus concedes, the Certificate of Service accompanying the NTA indicates that De Jesus was given oral notice, in Spanish, of the removal proceedings against him, of the requirement that he appear before the IJ on November 6, 2006 at 1:00 pm at the location specified, and of the consequences for failing to do so. De Jesus does not dispute that he was arrested by ICE on the day the NTA issued. And he does not dispute in his affidavit that he is also known as De Jesus or that the Certificate of Service is signed "De Jesus" and bears a distinctive mark similar to his signature on documents submitted with his motion to reopen. Beyond that evidence, "there is a presumption of legitimacy accorded to the Government's official conduct" that typically must be overcome by clear evidence. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). De Jesus's affidavit, which states that officers were "rushing" to finish processing him (App. at 106), is not clear evidence that the ICE

5

officers did not properly discharge their duty to inform him of the charges against him, his obligations to provide the government with his address and to attend his removal hearing, or of the consequences of failing to do so. That is particularly so since an ICE official signed the NTA certifying that De Jesus had been provided notice, in his native language, of the time and place of his hearing and the consequences for failing to appear. Accordingly, we will not disturb the BIA's ruling.[3]

De Jesus's second argument, that the BIA abused its discretion in finding that factual errors in the NTA were *de minimus*, also lacks merit. He contends that the BIA's "discount" of what he claims are errors in the NTA – listing the wrong name, alien number, and country of citizenship, as well as its bearing a signature that he says is not his – qualifies as an abuse of discretion.[4] As De Jesus sees it, those purported errors "call[] into question the rationality of the Board's decision" and are so serious that it would be "fundamentally unfair to deny reopening" his case, making the Board's decision to do so an abuse of discretion. (Opening Br. at 12-13.) Apart from his failure

_____

[3] De Jesus dedicates a significant portion of his brief to arguments about mailed notice. But personal service of the NTA is all the notice that was required. *See* 8 U.S.C. § 1229(a)(1) ("[W]ritten notice … shall be given in person … (or, if personal service is not practicable, through service by mail….")).

[4] De Jesus also says that it is a constitutional violation to remove an alien to a country where that alien is not a citizen. That has no bearing on our analysis of whether the BIA abused its discretion in dismissing the appeal of his motion to reopen. Moreover, even if that proposition were correct, the Department of Homeland Security is not limited by the IJ's order. *See* 8 C.F.R. § 1240.12 ("In the event that the Department of Homeland Security is unable to remove the alien to the specified or alternative country or countries, the order of the immigration judge does not limit the authority of the Department of Homeland Security to remove the alien to any other country as permitted by section 241(b) of the Act."). And certain aliens may designate the country to which they want to be removed. 8 U.S.C. § 1231(b)(2)(A).

to provide any authority for that proposition, De Jesus faces another problem: the BIA did not find that the NTA contained any errors. The BIA simply noted that the NTA that was handed to him listed the correct alien number, 200-021-485, and that any later errors in the Notice of Hearing and IJ's removal order were *de minimus* and "did not prevent [De Jesus] from attending his removal hearing or providing the Immigration Court with his correct mailing address." (App. at 7.) To the extent De Jesus challenges the effectiveness of the notice he received based on alleged errors in the NTA, as discussed above, substantial evidence supports the BIA's conclusion that he was personally given the requisite notice.

Finally, De Jesus challenges the BIA's refusal to reopen his case *sua sponte*. He argues that the totality of the circumstances of his case – the pending I-130 petition filed on his behalf, humanitarian factors, the public interest, and purported lack of notice – makes his case exceptional, such that the BIA abused its discretion by not concluding the same. That argument also fails.

The BIA's discretion to decide whether to reopen a case *sua sponte* is "essentially unlimited," which makes BIA orders declining to exercise that discretion "functionally unreviewable." *Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 651 (3d Cir. 2017). Accordingly, we generally lack appellate jurisdiction to review a BIA decision to deny reopening a case *sua sponte*. *Id.* While there are exceptions to that general rule, *id.* at 651-56, De Jesus has not invoked them. We thus lack jurisdiction to consider that aspect of the BIA's decision, *id.* at 651, and will dismiss that portion of the petition for review.

**III.    CONCLUSION**

For the foregoing reasons, we will deny the petition for review in part and dismiss

it in part.