**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2980
_____

SATHEESKANNAN SENTHINATHAN,
                                         Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                         Respondent

_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A079-784-809)
Immigration Judge: Charles M. Honeyman

Submitted under L.A.R. § 34.1(a)
April 5, 2019

Before:  CHAGARES and HARDIMAN, Circuit Judges, and GOLDBERG, District
Judge[*]

(Filed: April 18, 2019)

_____

OPINION[+]
_____

---

[*] The Honorable Mitchell S. Goldberg, United States District Judge of the United States
District Court for the Eastern District of Pennsylvania, sitting by designation.

[+] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not
constitute binding precedent.

GOLDBERG, <u>District</u> <u>Judge</u>.

Petitioner Satheeskannan Senthinathan, a citizen of Sri Lanka, sought and was denied admission to the United States in 2001, and since that time, has repeatedly pursued protection from removal and asylum. On August 7, 2018, the Board of Immigration Appeals ("BIA") denied his fourth motion to reopen his petition seeking asylum, withholding of removal under the Immigration and Nationality Act, and withholding of removal under the regulations implementing the Convention Against Torture. On September 6, 2018, Senthinathan filed a Petition for Review, challenging the BIA's decision, pursuant to this Court's jurisdiction under 8 U.S.C. § 1252. For the reasons set forth below, we will dismiss the petition in part and deny the petition in part.

## I. BACKGROUND

On October 28, 2001, Senthinathan, a then 22-year-old native and citizen of Sri Lanka, attempted to enter the United States at the border at San Ysidro, California using fraudulent documents. He was denied admission and detained by United States Immigration officials. During review by an asylum officer, Senthinathan expressed a fear of persecution, which the asylum officer deemed credible and proper for referral to the San Diego Immigration Court. Senthinathan was also placed in removal proceedings for failing to possess a valid entry document and for making a willful misrepresentation of material fact in violation of Sections 212(a)(7)(A)(i)(I) and 212(a)(6)(C)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I), (a)(6)(C)(i). Thereafter, on January 10, 2002, Senthinathan filed a written asylum application requesting asylum based on race, nationality, membership in a particular social group, and political opinion.

2

On August 8, 2003, the Immigration Judge denied Senthinathan's application, finding that "[g]iven [Senthinathan's] admitted perjury regarding his travel to the United States, the internal inconsistencies in [Senthinathan's] testimony not related to such travel, and the lack of easily obtainable corroborating evidence, the Court cannot find that [Senthinathan] has given credible testimony in this case." AR 1421. The Immigration Judge concluded that "[Senthinathan] is not eligible for asylum, as he has failed to present credible testimony to support his claim of past or future persecution by the Sri Lankan security forces, and his fear of the Tamil Tigers [a terrorist organization], though objectively evident, is not on the basis of a prescribed ground." Id. The Immigration Judge also determined that because Senthinathan's testimony was not credible, Senthinathan had failed to demonstrate that he would, more likely than not, be tortured if removed to Sri Lanka. In reaching these conclusions, the Immigration Judge relied, in part, on testimony from Special Agent Steven Schultz, a member of the Joint Terrorism Task Force, who was asked to investigate the arrival of approximately twenty Sri Lankans in November 2001, because of possible ties with the LTTE (the "Tamil Tigers").

Senthinathan timely appealed to the Board of Immigration Appeals ("BIA"), which affirmed the Immigration Court's decision on January 2, 2004. The BIA stated, in part, that "we agree with the Immigration Judge that [Senthinathan's] credibility was adversely affected by his admittedly false initial testimony regarding the circumstances of his route to the United States, as well as discrepancies between his asylum application and that portion of his testimony that he claimed was truthful." AR 1367. It further noted that, "[g]iven the testimony presented by an agent of the Department of Homeland Security, we

3

find it highly likely that, even if [Senthinathan] is not a member of the Liberation Tigers of Tamil Eelam (LTTE), a designated foreign terrorist organization, he no doubt was aware of the LTTE's involvement in the smuggling operation in which he participated." Id.

Senthinathan sought review from the United States Court of Appeals for the Ninth Circuit. On April 20, 2006, the Ninth Circuit found "substantial record evidence to support the [Immigration Judge's] adverse credibility finding," and affirmed the BIA's decision. Senthinathan v. Gonzales, 176 F. App'x 865, 866 (9th Cir. 2006).

On October 4, 2006, Senthinathan filed his first motion to reopen/reconsider with the BIA, alleging that his ongoing detention by the Immigration and Naturalization Service ("INS") precluded him from properly documenting his claim for relief, and that, if given the opportunity, he could substantiate his claim through additional documents, medical reports, and witnesses. The BIA denied his motion on November 6, 2006, finding that, because it had not been filed within thirty days of the administratively-final order, it was untimely pursuant to 8 C.F.R. § 1003.2(b)(2), and would not be substantively considered. Senthinathan did not seek review of this ruling.

On November 17, 2006, Senthinathan, represented by counsel, filed his second motion to reopen based on changed circumstances to apply for asylum, withholding of removal, and protection under the Convention Against Torture. Appended to this filing were multiple articles regarding ethnic tension in Sri Lanka and governmental action against the Tamil Tigers.

On January 18, 2007, the BIA *sua sponte* reconsidered its January 2, 2004 decision and remanded the case to the San Diego Immigration Court, stating:

4

> While the finding that [Senthinathan] did not testify credibly gives us pause in reopening for further consideration of an application based on the same claim, we find that *sua sponte* reconsideration and reopening of our January 2, 2004, decision is warranted for further consideration of the respondent's applications in light of the Ninth Circuit's intervening decision in *Suntharalinkam v. Gonzales*, 458 F.3d 1034 (9th Cir. 2006), in which the court, *inter alia*, criticized the reliance on inconsistencies that did not go to the heart of a similar Sri Lankan asylum claim and rejected, as speculative, the testimony of the DHS's [Department of Homeland Security] witness, Agent Schultz, whose testimony was also specifically noted in the instant case.

AR 1223. In light of these observations, the BIA directed the Immigration Judge to reconsider the asylum petition and the updated background evidence.

In January 2007, upon parole from immigration custody, Senthinathan moved to Exton, Pennsylvania. He then sought and was granted a change of venue to the Philadelphia Immigration Court.

On September 9, 2008, in compliance with the BIA's remand instructions, the Philadelphia Immigration Court entered a new decision denying (a) asylum, (b) the withholding of removal under the INA, and (c) the withholding of removal under the regulations implementing the Convention Against Torture. The Immigration Judge found Senthinathan's testimony to be credible and supported by corroborating evidence and additionally determined that he was eligible for both asylum pursuant to INA § 208 and withholding of removal pursuant to INA § 241(b)(3). Notwithstanding these findings, the Immigration Judge concluded that Senthinathan was subject to the mandatory bar on these forms of relief, as set forth in INA § 241(b)(3)(B)(iv), "due to the fact that he has engaged in terrorist activity." AR 658. The Immigration Judge ultimately determined that, because Senthinathan was eligible for relief under the Convention Against Torture, but was subject

to mandatory denial of that relief, he should be granted deferral of removal to Sri Lanka under 8 C.F.R. § 1208.17(a).

Senthinathan did not appeal this decision to the BIA, but rather filed a third motion for reconsideration and/or to reopen with the Philadelphia Immigration Court. He argued that: (1) the Immigration Judge violated collateral estoppel by finding he provided material support to the Tamil Tigers; (2) the Immigration Judge violated due process by finding he provided material support; (3) the record lacked a factual basis for the material support finding; (4) the credibility determination precluded a finding that Senthinathan provided material support to a terrorist organization; (5) the Immigration Judge in Philadelphia should have applied the Ninth Circuit's decision in Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006); and (6) the Immigration Judge incorrectly concluded that Senthinathan did not deserve a favorable exercise of discretion.

In support of his motion, Senthinathan cited, for the first time, the testimony of Professor Robert Oberst given in the 2004 removal proceedings of fellow Sri Lankan Ahilan Nadarajah. In those proceedings, Agent Schultz—the same agent that was involved in Senthinathan's proceedings—had also concluded that Nadarajah was a member of the Tamil Tigers based on the fact that he would never have been able to reach the United States without the assistance of that group. Professor Oberst disagreed with Agent Schultz by opining that the area where the individual lived was not controlled by the Tamil Tigers, and that it was unlikely that the Tigers would smuggle any individuals out of that particular area. Therefore, Senthinathan argued that Agent Schultz's similar testimony given in his proceedings should likewise be discredited.

6

On January 7, 2009, the Immigration Judge, in a comprehensive decision, denied Senthinathan's third motion seeking reopening and/or reconsideration. In doing so, the Immigration Judge made multiple findings. First, he determined that the evidence Senthinathan proffered was previously available and could have been submitted at his prior hearing and with his motion for reconsideration. Second, he concluded that Senthinathan's decision to use the Tamil Tigers to smuggle him into the United States directed money to that group, thus constituting material support, regardless of whether Senthinathan personally paid the smugglers. Third, the Immigration Judge rejected Senthinathan's argument that a favorable credibility finding barred a material support finding. Fourth, the Immigration Judge found that the Ninth Circuit's decision in Nadarajah v. Gonzalez was not controlling because (a) it addressed the legality of indefinite detention, not the merits of the material support case; and (b) a decision granting Nadarajah relief did not compel the same ruling in a different case where an individual determination had to be made based on the record and the alien's circumstances. Fifth, the Immigration Judge explained that he lacked discretion to grant relief because, under the September 9, 2008 ruling, Senthinathan was barred from asylum for providing material support to the Tamil Tigers. Finally, as to the request for *sua sponte* reopening, the Immigration Judge noted that a successful motion to reopen must be accompanied by evidence that was not previously available or discoverable and that is material to the claim. The Immigration Judge noted that the trial transcript from the Nadarajah case and the testimony of Professor Robert Oberst were not new evidence, since the transcript had been filed on January 3, 2005, and therefore was available prior to the filing of the third motion to reopen.

Senthinathan appealed to the BIA, which dismissed the appeal on January 13, 2012. The BIA found that the Philadelphia Immigration Court had specifically and thoroughly addressed each of Senthinathan's arguments.

Senthinathan then petitioned for review to this Court. On February 28, 2013, we denied his petition, finding substantial evidence in the record to support the Immigration Judge's denial of the motion to reopen, and noting that much of the evidence presented by Senthinathan was previously available or discoverable. Senthinathan v. Att'y Gen. of the United States, 514 F. App'x 237 (3d Cir. 2013).

Approximately five years later, on February 6, 2018, Senthinathan filed a fourth motion to reopen to apply for asylum, withholding of removal, and protection under the Convention Against Torture pursuant to the BIA's *sua sponte* powers and/or based on changed circumstances. To avoid the time and number limits on motions to reopen, set forth in 8 U.S.C. § 1229a(c)(7)(A) and (C)(i), Senthinathan cited changed country conditions. Senthinathan also challenged the Immigration Judge's factual finding that he provided material support to the Tamil Tigers, again relying on the testimony of Professor Robert Oberst. Further, he claimed that under the "pattern or practice of persecution" regulation, 8 C.F.R. § 208(b)(2)(iii)(A), he was eligible for asylum.

On August 7, 2018, the BIA denied the motion to reopen, finding that it was untimely and number-barred, and that Senthinathan had not shown that he was *prima facie* eligible for asylum, withholding of removal, or withholding of removal under the Convention Against Torture. The BIA noted that because the Immigration Judge determined that Senthinathan provided material support to a designated terrorist

8

organization—a decision affirmed by both the BIA and this Court—that determination barred any relief except for deferral of removal under the Convention Against Torture, relief which Senthinathan had already been granted. The BIA also rejected Senthinathan's reliance on the testimony of Professor Oberst because that evidence predated the Immigration Judge's 2008 decision and was already considered and rejected. Finally, the BIA declined to exercise its *sua sponte* discretionary authority to reopen proceedings because Senthinathan had not demonstrated an exceptional situation justifying the exercise of that authority.

Senthinathan filed a Petition for Review in this Court on September 6, 2018.

## II. JURISDICTION

We have jurisdiction over this matter pursuant to 8 U.S.C. § 1252(a)(1), which explicitly confers jurisdiction to review final orders of removal on the courts of appeals, and implicitly confers jurisdiction to review the denial of motions to reopen. Mata v. Lynch, 135 S. Ct. 2150, 2154 (2015).

## III. ANALYSIS

Senthinathan challenges both the BIA's denial of his motion to reopen based on the BIA's *sua sponte* power and his motion to reopen based on changed country circumstances. For the following reasons, we lack jurisdiction to review the BIA's decision not to exercise its *sua sponte* power and will not disturb the rulings or findings of the BIA otherwise.

### A. DENIAL OF MOTION TO REOPEN *SUA SPONTE*

Senthinathan first contends that the BIA's denial of his motion to reopen pursuant to its *sua sponte* power was in error.

9

Decisions as to the exercise of *sua sponte* authority to reopen a case are committed to the "unfettered discretion" of the BIA. Calle-Vujiles v. Ashcroft, 320 F.3d 472, 474 (3d Cir. 2003) (quotations omitted). Thus, an order by the BIA declining to exercise jurisdiction to reopen *sua sponte* is "functionally unreviewable." Sang Goo Park v. Attorney Gen., 846 F.3d 645, 651 (3d Cir. 2017). Only two exceptions exist to the rule against review: (1) when the BIA relies on an incorrect legal premise in denying a motion to reopen *sua sponte*, and (2) if the BIA announces and follows a general policy by which its exercise of discretion will be governed. Id. at 651.

Senthinathan does not establish either exception. Rather, he contends that had the BIA taken into consideration the testimony of Professor Oberst—which challenged Agent Schultz's testimony regarding Senthinathan's provision of material support to the Tamil Tigers—the BIA would have found that Senthinathan had established a *prima facie* case of entitlement to relief. He asserts that the BIA's refusal to consider Professor Oberst's testimony because it was previously available constituted legal error since the exclusion of evidence as "previously-available" is only a concern in a motion to reopen for changed country conditions.

We have no jurisdiction to consider these arguments. On appeal to the BIA, Senthinathan challenged the evidentiary basis of the Immigration Judge's material support finding. Noting that the evidence predated the Immigration Judge's decision, the BIA remarked that the Immigration Judge "previously considered and rejected the respondent's request to reopen based on the testimony of Dr. Oberst." AR 04. The BIA's refusal to

10

exercise its discretion to reconsider the Immigration Judge's factual determination regarding material support is not subject to judicial review.

## B. DENIAL OF MOTION TO REOPEN BASED ON CHANGED COUNTRY CIRCUMSTANCES

Senthinathan's second argument challenges the denial of the motion to reopen based on changed country circumstances.

Two standards of review are applicable. Liu v. Attorney General of U.S., 555 F.3d 145, 148 (3d Cir. 2009). First, we review the denial of a motion to reopen for an abuse of discretion. Id. Second, using a deferential standard of review, we uphold the BIA's factual determinations if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). "[W]e can reject the BIA's factual findings only if 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. (quoting Elias-Zacarias, 502 U.S. at 481 and citing 8 U.S.C. § 1252(b)(4)(B)).

There is no dispute that Senthinathan's motion to reopen was untimely, as it was not filed with the BIA within ninety days of the BIA's 2012 decision. See 8 U.S.C. § 1229a(c)(7)(A) & (c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). However, the ninety-day requirement does not apply to motions that rely on evidence of "changed country conditions arising in the country of nationality or the country to which removal has been ordered if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); 8

11

C.F.R. § 1003.2(c)(3)(ii). The reference to "previous proceeding" refers to the proceeding before the immigration judge. Filja v. Gonzales, 447 F.3d 241, 252 (3d Cir. 2006).

The immigration judge or the BIA may deny a motion to reopen immigration proceedings on one of three principal grounds: (1) the movant failed to establish a prima facie case for the relief sought; (2) the movant has failed to introduce previously unavailable material evidence that justified reopening; or (3) in cases in which the ultimate grant of relief being sought is discretionary (asylum, suspension of deportation, and adjustment of status), the BIA can "pass by" the first two bases and determine that even if they were met, the movant would not be entitled to relief. Id. at 255 (citing INS v. Doherty, 502 U.S. 314 (1992); INS v. Abudu, 485 U.S. 94, 105 (1988)).

Here, the BIA found that Senthinathan failed to introduce previously-unavailable material evidence that justified reopening. Specifically, the BIA noted that the evidence on which Senthinathan's motion to reopen was premised—Professor Oberst's testimony—predated the Immigration Judge's 2008 decision and, therefore, could have been introduced at that proceeding.

In an effort to avoid this bar, Senthinathan makes the unsubstantiated argument that because "Professor Oberst's testimony did not originate from the country of deportation . . . it cannot be excluded on the ground that Professor Oberst's testimony was previously available." (Petitioner's Br. 12.) However, the statute, 8 U.S.C. § 1229a(c)(7)(C)(ii), does not make any distinction between testimony or evidence that originates from the country of deportation and testimony or evidence that does not. Rather, it simply requires that a petitioner produce material evidence that was not available at the previous proceeding of

12

changed country conditions arising in the petitioner's country of nationality. Thus, because Professor Oberst's testimony was available prior to the Immigration Judge's 2008 decision, the BIA properly declined to consider it.

Senthinathan has had more than adequate review of his case. He received two separate merits hearings in 2002 and 2008. In lieu of appealing the 2008 decision to the BIA, he requested that the Immigration Judge reconsider or reopen and offered, for the first time, Professor Oberst's testimony. The Immigration Judge properly declined to consider this evidence as undermining the material support finding—a decision that was ultimately affirmed by this Court. As Senthinathan failed to introduce previously-unavailable material evidence that justified his February 6, 2018 motion to reopen, the BIA did not abuse its discretion.

IV.

For these reasons, we will dismiss Senthinathan's Petition for Review as to the BIA's decision not to exercise its *sua sponte* authority and deny the remainder of the petition for lack of merit.