**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1167
_____

ABDULMALIK MAHYOUB MULHI ABDULLA,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(No. A041-706-347)
Immigration Judge:  Nelson V. Padilla
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 19, 2019
_____

Before:  CHAGARES, MATEY, and FUENTES, <u>Circuit
Judges</u>.

(Filed: August 20, 2020)

Julie A. Goldberg, Esq.
Goldberg & Associates
5586 Broadway, 3rd Floor
Suite 716
Bronx, NY 10463
        Counsel for Petitioner

Claire Workman, Esq.
Senior Litigation Counsel
Don G. Scroggin, Esq.
Trial Attorney
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044
        Counsel for Respondent

_____

OPINION OF THE COURT
_____

CHAGARES, Circuit Judge.

Abdulmalik Mahyoub Mulhi Abdulla petitions for review of the Board of Immigration Appeals' ("BIA") order denying his motion for certification of late-filed appeal. After an immigration judge ("IJ") ordered Abdulla removed from the United States, Abdulla had 30 days to appeal that order to the BIA but did not do so for 78 days. Abdulla moved the BIA to exercise its discretion to permit the late-filed appeal, citing the exceptional circumstances presented by his appeal,

which raises several claims of ineffective assistance of counsel. Because we conclude that the BIA's discretion in the context of this case is not cabined by law, regulation, or a settled course of prior agency action, we lack jurisdiction to review the BIA's decision not to self-certify the late-filed appeal and will dismiss the petition for review in part. We also conclude that we lack jurisdiction to review Abdulla's unexhausted merits claim and non-colorable due process claim. And because Abdulla's other claims are unavailing, we will deny the petition in part.

I.

Abdulla was born in Yemen in 1976 to two Yemeni parents. In 1986, when Abdulla was nine years old, his father became a naturalized United States citizen. Three years later, Abdulla's parents legally separated and then divorced. Abdulla and his brother, Fawaz Abdulla, joined their father in the United States in May 1990, and Abdulla became a lawful permanent resident at that time. Abdulla contends that in that same year, his father filed N-600 applications to naturalize both children, but that due to former counsel's ineffective assistance, this documentation was not made part of the Administrative Record. While Fawaz Abdulla received proof of United States citizenship in 1995, Abdulla claims that his application was never processed for reasons unknown.[1]

In 2014, Abdulla was convicted of food stamp fraud, wire fraud, and aiding and abetting, in the United States District Court for the District of Maryland. In March 2017,

---

[1] According to the United States Department of Homeland Security ("DHS"), Abdulla's N-400 naturalization application was filed in 1996 and denied in 2009.

DHS issued a Notice to Appear ("NTA") alleging that Abdulla was not a United States citizen and that as a result of his federal criminal convictions, he was subject to removal. DHS served the NTA on Abdulla in January 2018. The NTA served on Abdulla at that time did not specify the date and time of Abdulla's first hearing, providing only that the date and time of the hearing remained to be set.

In Abdulla's removal hearing before the IJ, Abdulla's prior counsel argued that Abdulla had acquired derivative United States citizenship based on the law in effect at the time of his birth, and that Abdulla therefore could not be removed from the United States. Abdulla's prior counsel also moved to terminate the removal proceedings, contending that DHS had failed to establish that Abdulla's convictions were aggravated felonies under the Immigration and Nationality Act ("INA"). The motion to terminate did not, however, raise any argument that the NTA was improper because of its failure to provide the date and time of Abdulla's first hearing or that the immigration court lacked jurisdiction as a result of Abdulla's derivative citizenship, both of which Abdulla now identifies as failures amounting to constitutionally ineffective assistance of counsel. Abdulla similarly faults his prior counsel for failing to bring any claims for relief under INA § 212(h) (waiver of inadmissibility for certain crimes).

In May 2018, the IJ denied Abdulla's motion to terminate and sustained the charge of removability against Abdulla. Abdulla's prior counsel then petitioned for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") on his behalf. In his application for asylum and withholding of removal, Abdulla explained that he feared harm if he returned to Yemen as a result of the civil

4

war, noting specifically that the Houthi rebels are hostile towards Sunni Muslims such as himself and that while he opposes violence, he fears that the Yemeni military would force him to fight.

On October 4, 2018, the IJ denied Abdulla's petition and ordered him removed from the United States. Abdulla's appeal to the BIA was due on November 5, 2018, but it was not filed until December 21, 2018, shortly after Abdulla retained new counsel. That appeal included both a motion for an emergency stay of removal and a motion for certification of Abdulla's late-filed appeal. In support of the motion for certification of late-filed appeal, Abdulla noted that the BIA has previously held that where a case presents exceptional circumstances, the BIA may certify the case to itself even though it was filed after the deadline. Abdulla contended that his failure to file a timely appeal occurred for reasons that were both beyond his control and exceptional, because while detained, he reasonably expected that his prior counsel would act to preserve his appeal rights and that upon learning that prior counsel had failed to do so, he acted with "speed, diligence, and zeal" in asking new counsel to seek to prosecute his appeal. Administrative Record 22. Abdulla sought to present on appeal his principal argument — that he is a United States citizen — as well as his alternative claims to relief that he is eligible for (a) adjustment of status or waiver of inadmissibility and (b) asylum, withholding of removal, and CAT relief.

On January 10, 2019, the BIA, noting that the appeal was untimely by seven weeks, found that Abdulla failed to demonstrate exceptional circumstances for certification of the

5

appeal and accordingly dismissed the appeal. This timely petition for review followed.

## II.

The BIA had jurisdiction to hear Abdulla's appeal under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. As we hold infra, we lack jurisdiction to review the BIA's discretionary decision to decline to self-certify Abdulla's appeal as well as Abdulla's unexhausted merits claim.[2] However, we do have jurisdiction to review Abdulla's legal claim for derivative United States citizenship under 8 U.S.C. § 1252(b)(5). See Espichan v. Att'y Gen., 945 F.3d 794, 796 (3d Cir. 2019). We also have jurisdiction to review Abdulla's legal claim that the immigration court lacked jurisdiction to conduct the removal proceedings because of the NTA's failure to state the date and time of his initial hearing. See Nkomo v. Att'y Gen., 930 F.3d 129, 132 (3d Cir. 2019) (exercising jurisdiction over identical claim). Finally, we have jurisdiction to review "colorable" due process claims. Calderon-Rosas v. Att'y Gen., 957 F.3d 378, 384 (3d Cir. 2020) (quoting Pareja v. Att'y Gen., F.3d 180, 186 (3d Cir. 2010)).

---

[2] Although we conclude that we lack jurisdiction over Abdulla's challenge to the BIA's decision not to exercise its discretion to self-certify the late-filed appeal, we have jurisdiction to determine our own jurisdiction. See Orie v. Dist. Att'y Allegheny Cnty., 946 F.3d 187, 190 n.7 (3d Cir. 2019).

We exercise plenary review over Abdulla's due process claim and questions of law. Yusupov v. Att'y Gen., 650 F.3d 968, 977 (3d Cir. 2011).

### III.

Abdulla asks us to review the BIA's decision not to self-certify his late-filed appeal. We lack jurisdiction to do so here.

The BIA is empowered by regulation to exercise appellate jurisdiction over procedurally improper appeals, where it chooses to self-certify such an appeal. See 8 C.F.R. § 1003.1(c) ("Jurisdiction by certification"). This regulation provides:

> The Board in its discretion may review any . . . case [arising under its appellate jurisdiction] by certification without regard to the provisions of § 1003.7 if it determines that the parties have already been given a fair opportunity to make representations before the Board regarding the case, including the opportunity [to] request oral argument and to submit a brief.

Id. (emphasis added).

The Administrative Procedure Act provides for judicial review of final agency actions except where judicial review is precluded by statute or where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Agency action is deemed "committed to agency discretion by law," id., where a law is drawn "so that a court would have no

7

meaningful standard against which to judge the agency's exercise of discretion," Heckler v. Chaney, 470 U.S. 821, 830 (1985).

Section 1003.1(c) provides that the BIA "may" self-certify an appeal "in its discretion," without any limiting language, meaning that there is no standard by which we can review the BIA's exercise of discretion. Nor do other regulations or statutes provide us with a benchmark for review of this agency action. So we lack jurisdiction to review this discretionary decision.

Abdulla contends that we can review the BIA's decision because in other cases, the BIA has made clear its power to self-certify appeals that present "exceptional circumstances." See Matter of Liadov, 23 I&N Dec. 990, 993 (BIA 2006) (noting that "[w]here a case presents exceptional circumstances, the Board may certify a case to itself under 8 C.F.R. § 1003.1(c)"). According to Abdulla, the BIA erred in determining that his appeal did not present extraordinary circumstances.[3] But the BIA has not elaborated the content of that standard, making it impossible for us to determine whether a given case does or does not present the type of "extraordinary circumstances" that might merit self-certification of a late-filed appeal.

---

[3] Abdulla bases his claim of extraordinary circumstances primarily on his arguments that he acquired derivative citizenship and that his NTA's defects deprived the immigration court of jurisdiction. As we explain below, those arguments are foreclosed under our binding precedent.

8

While this question is one of first impression in this Court, we are also guided by our earlier jurisprudence in a related area. In our decision in <u>Sang Goo Park v. Attorney General</u>, we considered a petitioner's request that we review the BIA's denial of his request for "<u>sua</u> <u>sponte</u>" reopening under 8 C.F.R. § 1003.2(a). 846 F.3d 645, 647 (3d Cir. 2017). Under that regulation as well, "the BIA may reopen a case at any time," and it "has held . . . that it will do so only in extraordinary circumstances." <u>Id.</u> at 647–48. We noted that the agency's "discretion in this area is . . . so broad . . . that we have no meaningful way to review it, thereby depriving us of jurisdiction over orders denying <u>sua</u> <u>sponte</u> reopening." <u>Id.</u> at 648.

In <u>Sang Goo Park</u>, we explained two exceptions to our lack of jurisdiction to review orders denying <u>sua</u> <u>sponte</u> reopening. First, we have held that "when the BIA relies on an incorrect legal premise in denying a motion to reopen <u>sua</u> <u>sponte</u> . . . . we may exercise jurisdiction . . . and remand to the BIA so that it may exercise its <u>sua</u> <u>sponte</u> authority under the correct legal framework." <u>Id.</u> at 651 (citation omitted). Second, we held under the "settled course exception" that we may exercise jurisdiction over the denial of <u>sua</u> <u>sponte</u> reopening if a petitioner can "establish that the BIA has limited its discretion via a policy, rule, settled course of adjudication, or by some other method, such that the BIA's discretion can be meaningfully reviewed for abuse." <u>Id.</u> at 653. However, we concluded that the BIA cases cited by the petitioner "d[id] not lead to the reasonable inference that the BIA ha[d] done so here." <u>Id.</u> at 656.

Neither of the <u>Sang Goo Park</u> exceptions, even if they are applicable to this case, permit review of Abdulla's

9

petition. The BIA did not rely on any incorrect legal premise in declining to self-certify the appeal. Nor has Abdulla identified any manner in which the BIA has limited its own discretion in this area such that that discretion can be reviewed for abuse. Notwithstanding the similarities between Sang Goo Park and this case, Abdulla presents no argument explaining why a different outcome should result here. Nor can we discern one.

In concluding that, as a general matter, we lack jurisdiction to review the BIA's decision not to self-certify an appeal, we join the Courts of Appeals for the Second, Eighth, Ninth, and Tenth Circuits. See Idrees v. Barr, 923 F.3d 539, 543 (9th Cir. 2019) ("Because we do not have jurisdiction to review the IJ and BIA's decision not to certify [the petitioner's] . . . claim, we dismiss his appeal of the failure to certify."); Vela-Estrada v. Lynch, 817 F.3d 69, 71 (2d Cir. 2016) (same); Liadov v. Mukasey, 518 F.3d 1003, 1011 (8th Cir. 2008) (concluding that "the BIA's refusal to self-certify was an unreviewable action committed to the agency's discretion"); Mahamat v. Gonzales, 430 F.3d 1281, 1284 (10th Cir. 2005) (holding that "insofar as [the petitioner] argues that the BIA should have certified his case for review under 8 C.F.R. § 1003.1(c)," the court "lack[s] jurisdiction").

And while our sister Courts of Appeals have identified certain limited exceptions to this rule, those exceptions largely track those identified in Sang Goo Park. Compare, e.g., Vela-Estrada, 817 F.3d at 71 n.1 ("Where, in denying certification, the BIA misperceives the law or misunderstands its own jurisdiction, it is appropriate to remand to allow the BIA to consider its authority."), with Sang Goo Park, 846 F.3d at 651 ("[W]hen the BIA relies on an incorrect legal

10

premise in denying a motion to reopen <u>sua</u> <u>sponte</u> . . . . we may exercise jurisdiction . . . and remand to the BIA so that it may exercise its <u>sua</u> <u>sponte</u> authority under the correct legal framework." (citation omitted)). <u>Compare also</u> <u>Idrees</u>, 923 F.3d at 543 n.3 ("We do not hold that judicial review of the BIA's refusal to certify a case is never appropriate. In other contexts, we have held that, even where a regulation commits a matter to agency discretion, the court may review the decision if there is 'law to apply' in doing so." (citation omitted)), <u>with</u> <u>Sang Goo Park</u>, 846 F.3d at 653 (identifying the "settled course exception" to our lack of jurisdiction to review the BIA's denial of a motion to reopen <u>sua</u> <u>sponte</u>). For the same reasons that <u>Sang Goo Park</u>'s exceptions do not permit review of Abdulla's claim, the exceptions identified by our sister Courts of Appeals are also unavailing.

Accordingly, we cannot exercise jurisdiction over Abdulla's claim that the BIA erred in declining to self-certify his late-filed appeal, and we will dismiss the petition in part.[4]

## IV.

Abdulla next argues that the immigration court lacked jurisdiction because DHS failed to prove his removability by clear and convincing evidence, relying on the Supreme Court's decision in <u>Nijhawan v. Holder</u>, 557 U.S. 29 (2009).

---

[4] Abdulla raises various merits arguments in support of his claim that the BIA abused its discretion in declining to self-certify his late-filed appeal. Because we conclude that we lack jurisdiction to review that discretionary decision, we only discuss one of his merits claims, in section IV below, which Abdulla raises separately.

11

The Government responds that Abdulla failed to exhaust his merits arguments, and that we therefore lack jurisdiction to review this claim. In support of this proposition, the Government cites our decision in Bejar v. Ashcroft, in which we noted that 8 U.S.C. § 1252 requires the exhaustion of administrative remedies "prior to seeking judicial review of a final . . . removal order" and held that the "failure [to] timely . . . appeal to the BIA . . . constitutes a failure to exhaust administrative remedies." 324 F.3d 127, 132 (3d Cir. 2003). Abdulla replies that he exhausted his administrative remedies by raising his merits claims to the BIA in his untimely filing, because that filing "demonstrate[d] exceptional circumstances and ineffective assistance of counsel." Abdulla Reply Br. 8.

Abdulla does not address Bejar but instead relies on our holding in Lin v. Attorney General that "so long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative remedies." 543 F.3d 114, 121 (3d Cir. 2008). But Lin did not involve a claimed failure to exhaust due to an untimely appeal to the BIA. The petitioner in that case did timely appeal the immigration court's decision, and the question presented was whether or not the petitioner had failed to put the BIA on notice of a specific claim raised in the petition for review. See id. at 119–22. Nothing in Lin calls into question our holding in Bejar. For these reasons, we agree with the Government that Abdulla failed to exhaust this merits argument, and we therefore lack

12

jurisdiction to review it. We will dismiss the petition in part with respect to this claim.[5]

## V.

Abdulla also contends that he was not the proper subject of removal proceedings and that the immigration court did not have jurisdiction for two additional reasons. Neither of these arguments are availing.

First, Abdulla contends that the immigration court lacked jurisdiction because he is a United States citizen. Since he was never formally naturalized, his claim is that he qualified for derivative citizenship through his father's naturalization, under the law at the time, former 8 U.S.C. §

---

[5] Abdulla bases his due process claim on his arguments that his prior counsel was ineffective for failing to raise his derivative citizenship status or that the defective NTA divested the immigration court of jurisdiction over his removal. As we explain below, those arguments are foreclosed squarely by our binding precedent. And in the context of "a petitioner seeking discretionary relief" who asserts "ineffective assistance of counsel or procedural due process claims," we have jurisdiction only to review "colorable [constitutional] claims or questions of law." Calderon-Rosas, 957 F.3d at 384 (quotation marks omitted) (alteration in original). Given the outright foreclosure of Abdulla's legal arguments by our precedent, his due process arguments are not colorable, so we therefore lack jurisdiction to consider them. Cf. id. at 386 ("Because Calderon-Rosas's due process claims are also colorable on their merits . . . our review of those claims is a proper exercise of jurisdiction.").

13

1432(a).  But as we have interpreted that statute — in binding precedent — Abdulla is statutorily ineligible for derivative citizenship.  In order for a child to be eligible for derivative citizenship under that provision, the parents must legally separate before the custodial parent becomes naturalized.  See Jordan v. Att'y Gen., 424 F.3d 320, 330 (3d Cir. 2005) (noting that "a child seeking to establish derivative citizenship under § 1432(a) must prove," inter alia, "that his [parent] was naturalized after a legal separation from his [other parent]" (quoting Bagot v. Ashcroft, 398 F.3d 252, 257 (3d Cir. 2005))).  Abdulla does not dispute that he fails to satisfy this requirement.  He instead contends that Jordan was wrongly decided, but under Third Circuit I.O.P. 9.1 we are bound by that decision.

Second, because Abdulla's NTA failed to provide the date and time of his first hearing, Abdulla contends that the immigration court never obtained jurisdiction, relying on the Supreme Court's decision in Pereira v. Sessions, 138 S. Ct. 2105 (2018).  But we rejected this argument in Nkomo v. Attorney General, 930 F.3d 129 (3d Cir. 2019), and under Third Circuit I.O.P. 9.1, we are bound by Nkomo.

For these reasons, Abdulla's challenges to the jurisdiction of the immigration court fail.  We will therefore deny his petition in part.

VI.

For the foregoing reasons, we will deny the petition for review in part and dismiss in part.

14