**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1167
_____

ABDULMALIK MAHYOUB MULHI ABDULLA,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(No. A041-706-347)
Immigration Judge:  Nelson V. Padilla
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
August 20, 2024
_____

Before:  CHAGARES, <u>Chief</u> Judge, BIBAS and MATEY,
<u>Circuit</u> <u>Judges</u>

(Filed: August 27, 2025)

Julie A. Goldberg, Esq.
Goldberg & Associates
3005 Oakwood Blvd.
Melvindale, MI 48122

Eric Hisey, Esq.
Goldberg & Associates
310 Beverley Rd. Apt. 3b
Brooklyn, NY 11218

　　　　　Counsel for Petitioner

Claire Workman, Esq.
Joseph H. Hunt, Esq.
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044

　　　　　Counsel for Respondent

_____

OPINION OF THE COURT
_____

CHAGARES, Chief Judge.

Abdulmalik Mahyoub Mulhi Abdulla petitions for review of an order by the Board of Immigration Appeals ("BIA") denying a motion for certification of a late-filed appeal. This petition was first before us in 2020, when we

2

dismissed it in part for lack of jurisdiction and for failure to exhaust administrative remedies, and denied it in remaining part for lack of merit. Among other things, applying binding precedent of our Court, we denied Abdulla's claim that he derived United States citizenship from his father.

Abdulla petitioned for certiorari to the United States Supreme Court, raising only his derivative citizenship claim. On October 18, 2021, the Supreme Court granted the petition and remanded the matter to this Court for further consideration of the derivative citizenship claim in light of the brief filed by the Acting Solicitor General for the United States. We have conducted that review, taking into particular account the Supreme Court's intervening decision in Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024). Upon careful consideration, we reach the same conclusion that we did previously: Abdulla's derivative citizenship claim fails under the precedent of our Court. For the reasons that follow, we once again will dismiss the petition in part for lack of jurisdiction and failure to exhaust administrative remedies, and we will deny it in remaining part because Abdulla's citizenship claim lacks merit under our binding precedent.

I.

Abdulla was born in Yemen in September 1976 to Yemeni parents. In March 1986, when Abdulla was nine years old, his father became a naturalized United States citizen. His parents legally separated and divorced three years later. Abdulla and his brother, Fawaz, joined their father in the United States in May 1990, and Abdulla became a lawful permanent resident at that time.

3

Abdulla contends that, in 1990, his father filed N-600 applications to naturalize both children. Allegedly due to former counsel's ineffective assistance, the application was not made part of the Administrative Record. Fawaz received proof of United States citizenship in 1995, but Abdulla claims that, for reasons unknown, his application was never processed.[1]

Abdulla was convicted in 2014 in the United States District Court for the District of Maryland of food stamp fraud, wire fraud, and aiding and abetting. DHS issued a Notice to Appear ("NTA") alleging that Abdulla was not a United States citizen and that, because of his federal criminal convictions, he was subject to removal. DHS served the NTA on Abdulla in January 2018. The NTA did not specify the date and time of Abdulla's first hearing, providing only that the date and time of the hearing remained to be set.

In Abdulla's removal hearing before the immigration judge ("IJ"), his prior counsel argued that Abdulla had acquired derivative United States citizenship from his father based on the law in effect at the time of his birth, and that Abdulla therefore could not be removed from the United States. Counsel also moved to terminate the removal proceedings, contending that DHS had failed to establish that Abdulla's convictions were aggravated felonies under the Immigration and Nationality Act ("INA").

---

[1] The United States Department of Homeland Security ("DHS") claims that Abdulla's N-400 naturalization application was filed in July 1996 and was denied in January 2009.

4

In May 2018, the IJ denied Abdulla's motion to terminate and sustained the charge of removability. Abdulla's prior counsel then petitioned on his behalf for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). In his application, Abdulla explained that he feared harm in Yemen because of the Yemeni civil war, noting that the Houthi rebels are hostile towards Sunni Muslims such as himself and that he feared the Yemeni military would force him to fight.

The IJ denied Abdulla's petition and ordered his removal on October 4, 2018. Abdulla's appeal to the BIA was due within thirty days, on November 5, 2018, but it was not filed until December 21, 2018, shortly after Abdulla retained new counsel. The appeal included both a motion for an emergency stay of removal and a motion for certification of the late-filed appeal. In support of the motion for certification of the late-filed appeal, Abdulla noted that the BIA has previously held that, where a case presents exceptional circumstances, the BIA may certify a case to itself even if filed after the deadline. Abdulla contended that his failure to file a timely appeal occurred for reasons that were both beyond his control and exceptional because, while he was detained, he reasonably expected that his prior counsel would act to preserve his appeal rights and, upon learning that prior counsel had failed to do so, he "acted with speed, diligence, and zeal" in asking new counsel to seek to prosecute his appeal. Administrative Record 22. Abdulla sought to present on appeal the principal argument that he is a United States citizen, as well as his alternative claims for relief from removal.

On January 10, 2019, the BIA, observing that the appeal was untimely by seven weeks, concluded that Abdulla

5

failed to demonstrate exceptional circumstances for certification of the appeal and dismissed the appeal as untimely filed. This petition for review followed.

We entered an opinion and judgment on August 20, 2020, dismissing Abdulla's petition for review in part for lack of jurisdiction and denying it in part for lack of merit. We concluded, among other things, that governing case law established that Abdulla did not derive citizenship from his father. Abdulla petitioned for rehearing, claiming that we erred in denying the derivative citizenship claim. Our Court denied panel and en banc rehearing.

Abdulla then petitioned for certiorari in the United States Supreme Court. He sought review of the derivative citizenship issue alone. The Supreme Court granted certiorari and vacated our judgment but did not hold argument or issue an opinion. Instead, the Supreme Court's Clerk directed in a letter order that the remand was "for further consideration [of Abdulla's citizenship claim] in light of the brief filed by the Acting Solicitor General." Supreme Court Order 1.

The matter is now before us. The parties submitted supplemental briefs setting forth their positions in light of the Supreme Court's remand order. While the matter was pending on remand, the Supreme Court issued its decision in Loper Bright, which impacted the degree of deference afforded to statutory interpretations by administrative agencies. We therefore requested additional briefing from the parties in light of Loper Bright. Having received those supplemental briefs, the matter is now ready for our disposition.

6

## II.

The BIA had jurisdiction to hear Abdulla's appeal under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. As we will discuss infra, we lack jurisdiction to review the BIA's discretionary decision to decline to self-certify Abdulla's appeal as well as Abdulla's unexhausted merits claims.[2] We do, however, have jurisdiction to review Abdulla's legal claim for derivative United States citizenship under 8 U.S.C. § 1252(b)(5). See Espichan v. Att'y Gen., 945 F.3d 794, 796 (3d Cir. 2019). We also have jurisdiction to review Abdulla's legal claim that the immigration court lacked jurisdiction to conduct the removal proceedings because of the NTA's failure to state the date and time of his initial hearing. See Nkomo v. Att'y Gen., 930 F.3d 129, 132 (3d Cir. 2019) (exercising jurisdiction over identical claim). These claims present legal questions, which we review de novo. Yusupov v. Att'y Gen., 650 F.3d 968, 977 (3d Cir. 2011).

## III.

Abdulla asks us to review the BIA's decision not to self-certify his late-filed appeal. We lack jurisdiction to do so.

The BIA is empowered by regulation to exercise appellate jurisdiction over procedurally improper appeals,

---

[2] Although we conclude that we lack jurisdiction over Abdulla's challenge to the BIA's decision not to exercise its discretion to self-certify the late-filed appeal, we have jurisdiction to determine our own jurisdiction. See Orie v. Dist. Att'y Allegheny Cnty., 946 F.3d 187, 190 n.7 (3d Cir. 2019).

where it chooses to self-certify such an appeal.  See 8 C.F.R. § 1003.1(c) ("Jurisdiction by certification").  This regulation provides:

> The Board, in its discretion, may review any . . . case [arising under its appellate jurisdiction] by certification without regard to the provisions of § 1003.7 if it determines that the parties have already been given a fair opportunity to make representations before the Board regarding the case, including the opportunity to request oral argument and to submit a brief.

Id. (emphasis added).

The Administrative Procedure Act ("APA") provides for judicial review of final agency actions except where judicial review is precluded by statute or where "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  Agency action is deemed "committed to agency discretion by law," id., where a law "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," Heckler v. Chaney, 470 U.S. 821, 830 (1985).

Section 1003.1(c) provides that the BIA "may" self-certify an appeal "in its discretion."  The provision includes no language limiting the BIA's decision to decline self-certification[3] — so there is no standard by which we may

---

[3] To be sure, the regulation is limited in that it first requires the BIA to "determine[] that the parties have already been given a fair opportunity to make representations before the Board regarding the case."  8 C.F.R. § 1003.1(c).  Here,

8

review the BIA's exercise of this discretion. Nor do other regulations or statutes provide us with a benchmark for review of this discretionary agency action.[4] The decision to decline self-certification here has been committed entirely to agency discretion by law so, under the APA, we lack jurisdiction to review it.

Abdulla disagrees. He contends that we have jurisdiction to review the BIA's self-certification denial because, in other cases, the BIA has held that it may self-certify appeals that present "exceptional circumstances." See, e.g., Matter of Liadov, 23 I. & N. Dec. 990, 993 (B.I.A. 2006) (noting that "[w]here a case presents exceptional circumstances, the Board may certify a case to itself under 8 C.F.R. § 1003.1(c)"), overruled on other grounds, Matter of Morales-Morales, 28 I. & N. Dec. 714 (B.I.A. 2023). Abdulla claims that the alleged ineffective assistance of counsel that resulted in the untimely filing of his appeal constitutes an exceptional circumstance, and that the BIA erred in determining otherwise. But the BIA has not given content to the "exceptional circumstances" standard by explaining what measures it applies to determine whether a case merits self-certification of a late-filed appeal. We therefore have no way to assess whether the BIA has abused its discretion in Abdulla's case.

---

however, there is no dispute that this threshold requirement was satisfied. Beyond the threshold requirement, there is no regulatory limitation on the BIA's discretion concerning a decision declining to self-certify an appeal.

[4] Cf. Qatanani v. Att'y Gen., 144 F.4th 485, 501 (3d Cir. 2025) (exercising jurisdiction to review the BIA's affirmative decision to self-certify a late-filed appeal).

9

This jurisdictional question is one of first impression in this Court. We are, however, guided by our jurisprudence in a closely related area. In our decision in <u>Sang Goo Park v. Attorney General</u>, 846 F.3d 645 (3d Cir. 2017), we considered a petitioner's request that we review the BIA's denial of his request for "<u>sua sponte</u>" reopening under 8 C.F.R. § 1003.2(a). <u>Id.</u> at 647. Under that provision, like § 1003.1(c), the BIA's discretion is extremely broad. The regulation provides that "the BIA may reopen a case at any time," and it "has held . . . that it will do so only in extraordinary circumstances." <u>Id.</u> at 647–48. We held in <u>Sang Goo Park</u> that the agency's "discretion in this area is . . . so broad . . . that we have no meaningful way to review it, thereby depriving us of jurisdiction over orders denying <u>sua sponte</u> reopening." <u>Id.</u> at 648. The logic of <u>Sang Goo Park</u> persuades us that the same outcome applies in this case.

In <u>Sang Goo Park</u>, we identified two limited exceptions that permit us to review orders denying <u>sua sponte</u> reopening. First, "when the BIA relies on an incorrect legal premise in denying a motion to reopen *sua sponte* . . . . we may exercise jurisdiction . . . and remand to the BIA so that it may exercise its *sua sponte* authority under the correct legal framework." <u>Id.</u> at 651 (citation omitted). Second, under "the 'settled course' exception," we may exercise jurisdiction over the denial of <u>sua sponte</u> reopening if a petitioner can "establish that the BIA has limited its discretion via a policy, rule, settled course of adjudication, or by some other method, such that the BIA's discretion can be meaningfully reviewed for abuse." <u>Id.</u> at 653. We concluded that these exceptions "d[id] not lead to the reasonable inference that the BIA ha[d limited its discretion]" in that case. <u>Id.</u> at 656.

10

If we assume (without deciding) that the two Sang Goo Park exceptions apply to a self-certification denial as well, they nonetheless would not permit us to review Abdulla's self-certification claim. Abdulla does not claim that the BIA relied on any incorrect legal premise in declining to self-certify Abdulla's appeal. Nor has Abdulla identified any respect in which the BIA has limited its own discretion in this area such that we can review that exercise of discretion for abuse. Notwithstanding the obvious similarities between Sang Goo Park and his case, Abdulla presents no argument explaining why a different outcome should result in his case. Nor can we discern one.

In concluding that, as a general matter, we lack jurisdiction to review the BIA's decision not to self-certify an appeal, we join the other Courts of Appeals to have considered this issue — the Courts of Appeals for the Second, Eighth, Ninth, and Tenth Circuits. See Idrees v. Barr, 923 F.3d 539, 543 (9th Cir. 2019) ("Because we do not have jurisdiction to review the IJ and BIA's decision not to certify [the petitioner's] . . . claim, we dismiss his appeal of the failure to certify."); Vela-Estrada v. Lynch, 817 F.3d 69, 71 (2d Cir. 2016) (per curiam) (same); Liadov v. Mukasey, 518 F.3d 1003, 1011 (8th Cir. 2008) (concluding that "the BIA's refusal to self-certify was an unreviewable action committed to the agency's discretion"); Mahamat v. Gonzales, 430 F.3d 1281, 1284 (10th Cir. 2005) (holding that "insofar as [the petitioner] argues that the BIA should have certified his case for review under 8 C.F.R. § 1003.1(c)," the court "lack[s] jurisdiction"). And while our sister Courts of Appeals have identified certain limited exceptions to this rule, those exceptions largely track those we identified in Sang Goo Park. Compare, e.g., Vela-Estrada, 817 F.3d at 71 n.1

11

("Where, in denying certification, the BIA misperceives the law or misunderstands its own jurisdiction, it is appropriate to remand to allow the BIA to consider its authority."), with Sang Goo Park, 846 F.3d at 651 ("[W]hen the BIA relies on an incorrect legal premise in denying a motion to reopen *sua sponte* . . . . we may exercise jurisdiction . . . and remand to the BIA so that it may exercise its *sua sponte* authority under the correct legal framework." (citation omitted)).  Compare also Idrees, 923 F.3d at 543 n.3 ("We do not hold that judicial review of the BIA's refusal to certify a case is never appropriate.  In other contexts, we have held that, even where a regulation commits a matter to agency discretion, the court may review the decision if there is 'law to apply' in doing so." (citation omitted)), with Sang Goo Park, 846 F.3d at 653 (identifying the "settled course exception" to our lack of jurisdiction to review the BIA's denial of a motion to reopen sua sponte).  Thus, for the same reasons that Sang Goo Park's exceptions do not permit review of Abdulla's claim, the exceptions identified by our sister Courts of Appeals are also unavailing.

We conclude that we lack jurisdiction over Abdulla's claim that the BIA erred in declining to self-certify his late-filed appeal.  We therefore will dismiss the petition for review for lack of jurisdiction as to this claim.

IV.

Abdulla next argues that the immigration court lacked jurisdiction over his proceeding because DHS failed to prove his removability for having committed an aggravated felony by clear and convincing evidence, relying on the Supreme Court's decision in Nijhawan v. Holder, 557 U.S. 29 (2009). But Nijhawan does not stand for the proposition that the

12

immigration court lacks jurisdiction over cases in which DHS fails to prove removability. A purported failure by the government to meet the burden of proof is not a jurisdictional issue, but rather a challenge to the merits of the BIA's removal order. See, e.g., Dwumaah v. Att'y Gen., 609 F.3d 586, 589 (3d Cir. 2010) (per curiam) (considering merits of a claim that DHS failed to meet its burden of proof to show removability).

The Government responds that we cannot consider Abdulla's claim for a different reason: because he failed to file his BIA appeal on time, Abdulla did not exhaust available administrative remedies as to this and other claims he wished to raise in his BIA appeal.[5] In support of this proposition, the Government cites our decision in Bejar v. Ashcroft, 324 F.3d 127 (3d Cir. 2003), in which we noted that 8 U.S.C. § 1252 requires the exhaustion of administrative remedies "prior to seeking judicial review of a final . . . removal order" and held that the "failure [to] timely . . . appeal to the BIA . . . constitutes a failure to exhaust administrative remedies." Id. at 132. Abdulla replies that he exhausted administrative remedies by raising his claims to the BIA in his untimely filing, because that filing "demonstrat[ed] exceptional circumstances and ineffective assistance of counsel." Abdulla Reply Br. 8.

Abdulla does not address Bejar but instead relies on our holding in Lin v. Attorney General, 543 F.3d 114 (3d Cir. 2008), that "so long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a

---

[5] Abdulla wished to appeal the denial of asylum, withholding of removal, and CAT protection and to pursue a waiver of inadmissibility under 8 U.S.C. § 1182(h).

straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative remedies." Id. at 121 (quoting Joseph v. Att'y Gen., 465 F.3d 123, 126 (3d Cir. 2006)), abrogated on other grounds by, Santos-Zacaria v. Garland, 598 U.S. 411 (2023). But Lin, which has since been abrogated in part by the Supreme Court, is inapposite. Lin did not involve a claimed failure to exhaust administrative remedies due to an untimely appeal to the BIA. The petitioner in Lin did timely appeal the immigration court's decision, and the question presented was whether the petitioner had failed to put the BIA on notice of a specific claim raised in the petition for review. See id. at 119–22.

Nothing in Lin calls into question our holding in Bejar concerning the statutory exhaustion requirement. We agree with the Government that Abdulla failed to exhaust available administrative remedies as to several of the claims he wished to raise in his BIA appeal, including his claim that DHS failed to sustain its burden of proof to show his removability. See Aguilar v. Att'y Gen., 107 F.4th 164, 168–69 (3d Cir. 2024) (holding that, although it is not jurisdictional, the administrative exhaustion requirement is mandatory when properly raised by the Government). We therefore will dismiss the petition for review with respect to Abdulla's unexhausted claims.[6]

---

[6] Abdulla presents a due process claim premised on his view that his prior counsel was ineffective for failing to present his claims of derivative citizenship and that the defective NTA divested the immigration court of jurisdiction. Exhaustion is not required for "colorable" due process claims that could not have been presented to the BIA in the first instance. See Calderon-Rosas v. Att'y Gen., 957 F.3d 378,

14

## V.

Abdulla next contends that, because his NTA failed to provide the date and time of his first hearing, the immigration court never obtained jurisdiction over him. He relies on the Supreme Court's decision in <u>Pereira v. Sessions</u>, 585 U.S. 198 (2018), in which the Court held that a defective NTA that fails to specify the time and place for the removal proceeding does not trigger the "stop-time rule" set forth in 8 U.S.C. § 1229b(d)(1)(A). <u>Id.</u> at 209. Yet the stop-time rule is not at issue in Abdulla's case, and <u>Pereira</u> did not consider the jurisdictional argument that Abdulla presents. Our Court has, however, considered Abdulla's precise argument — and we have rejected it.

In <u>Nkomo v. Attorney General</u>, 930 F.3d at 133, we held that an NTA that is defective under <u>Pereira</u> does not deprive the immigration court of jurisdiction. We continue to abide by this principle. <u>See, e.g.</u>, <u>Chavez-Chilel v. Att'y Gen.</u>, 20 F.4th 138, 142 (3d Cir. 2021). Under Third Circuit Internal Operating Procedure ("I.O.P.") 9.1, we are bound by this precedent. <u>See</u> <u>Karns v. Shanahan</u>, 879 F.3d 504, 514 (3d Cir. 2018) ("We are . . . generally obligated to follow our precedent absent en banc reconsideration." (citing <u>United States v. Tann</u>, 577 F.3d 533, 541 (3d Cir. 2009)). We therefore will deny Abdulla's jurisdictional challenge based on the defective NTA.

---

384 (3d Cir. 2020) (quoting <u>Pareja v. Att'y Gen.</u>, 615 F.3d 180, 186 (3d Cir. 2010)); <u>Bonhometre v. Gonzales</u>, 414 F.3d 442, 447–48 (3d Cir. 2005). Even if we excuse exhaustion as to the due process claim, however, Abdulla's citizenship and NTA claims are clearly foreclosed by our precedent. <u>See infra</u>.

15

## VI.

We now arrive at the heart of this matter on remand — Abdulla's derivative citizenship claim. As we have explained, the derivative citizenship claim was the subject of Abdulla's petition for certiorari to the Supreme Court and is the reason for the Supreme Court's order remanding the matter to us. While we reach the same conclusion that we did initially — that Abdulla is not a United States citizen — we will give this claim the further consideration that is due in light of the Supreme Court's remand order.

Abdulla contends that the immigration court lacked jurisdiction over him because he is a United States citizen. Specifically, he claims that he qualified for derivative citizenship based on his father's naturalization under the law at the time, former 8 U.S.C. § 1432(a). We have jurisdiction to consider Abdulla's citizenship claim under 8 U.S.C. § 1252(b)(5), which permits Courts of Appeals to review nationality claims in which there is no genuine dispute of material fact.[7] See Espichan, 945 F.3d at 796.

Section 1432(a) provided in relevant part:

A child born outside of the United States of alien parents . . . becomes a citizen of the

---

[7] In cases where there is a genuine dispute of material fact about nationality, the Court of Appeals must transfer the matter to the appropriate district court for a hearing. 8 U.S.C. § 1252(b)(5)(B). Given that Abdulla's claim fails as a matter of law, there is no genuine dispute of material fact in this case to warrant a transfer to district court.

United States upon fulfillment of the following conditions:

. . . .

**The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents** . . . and if [s]uch naturalization takes place while such child is under the age of eighteen years; and [s]uch child is residing in the United States pursuant to a lawful admission for permanent residence . . . .

8 U.S.C. § 1432(a)(3)–(5) (1999) (repealed 2000) (emphasis added).[8]  For a child to be eligible for derivative citizenship under this provision, we have concluded that the parents must legally separate <u>before</u> the custodial parent becomes naturalized.  <u>See</u> <u>Jordon v. Att'y Gen.</u>, 424 F.3d 320, 330 (3d Cir. 2005) (holding, in part, that "a child seeking to establish derivative citizenship under § 1432(a) must prove . . . 'that his [parent] was *naturalized after a legal separation* from his [other parent]" (alteration in original) (quoting <u>Bagot v. Ashcroft</u>, 398 F.3d 252, 257 (3d Cir. 2005))).  Abdulla does not dispute that his parents were separated several years <u>after</u> his father became a naturalized citizen.  Under <u>Jordon</u> and

---

[8] Although § 1432 was repealed in 2000, we apply the law in effect at the time the events giving rise to the derivative citizenship claim occurred.  <u>Morgan v. Att'y Gen.</u>, 432 F.3d 226, 230 (3d Cir. 2005).  The relevant times are the date of Abdulla's birth, his entry into the United States, the date of his father's naturalization, and the date of his parents' separation.  Section 1432 was in effect during all relevant times.  <u>See</u> <u>id.</u>

17

Bagot, the order of these two occurrences is determinative. Applying our binding precedent, we therefore held in our 2020 opinion that Abdulla is not a United States citizen under § 1432.

Abdulla disagreed with this interpretation of § 1432, contending that the BIA adopted a better view in Matter of Baires-Larios, 24 I. & N. Dec. 467 (B.I.A. 2008), and Matter of Douglas, 26 I. & N. Dec. 197 (B.I.A. 2013). The BIA opined in Baires-Larios and Douglas that the statute's use of the word "when" is conditional, so the sequence in which the naturalization and separation happen is inconsequential so long as both of conditions are fulfilled. See Baires-Larios, 24 I. & N. Dec. at 470 (holding that the order in which a parent becomes naturalized and obtains custody of the child does not matter if both conditions are satisfied); Douglas, 26 I. & N. Dec. at 199–200 (discussing the fact that "when" is not defined in the INA and the dictionary reflects various meanings of the term, including indication of a time or a condition). Pressing this view, Abdulla sought certiorari in the Supreme Court, which granted his petition without opinion and vacated our judgment. The Supreme Court directed that the remand was "for further consideration in light of the brief filed by the Acting Solicitor General." Supreme Court Order 1.

The Solicitor General had argued in her 2021 Supreme Court brief that our Abdulla opinion "overlooked" the BIA's opinions in Baires-Larios and Douglas, and that those agency decisions "are entitled to deference and . . . rejected *Jordon*'s interpretation of the statute." Solicitor Gen. Br. 5. More specifically, the Solicitor General contended that the INA is ambiguous as to whether parental separation must occur before naturalization or not. She further argued that the BIA

18

in <u>Baires-Larios</u> and <u>Douglas</u> reached a reasonable interpretation of the ambiguous statute — namely, that the order of events is irrelevant to the derivative citizenship claim — so the BIA's interpretation was entitled to deference and the BIA was entitled to depart from <u>Jordon</u> under <u>National Cable & Telecommunications Ass'n v. Brand X</u>, 545 U.S. 967 (2005).

The Court held in <u>Brand X</u> that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to <u>Chevron</u>[9] deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." 545 U.S. at 982. Thus, if we were to adhere to <u>Brand X</u>, we might opt to reverse our prior position and follow the Solicitor General's reasoning, leading to a conclusion that Abdulla is a United States citizen. But a major change has since taken place, the importance of which cannot be overlooked.

The Supreme Court issued its opinion in <u>Loper Bright</u> in 2024. The Court held in <u>Loper Bright</u> that <u>Chevron</u> deference cannot be squared with the requirements of the APA, which demand that <u>courts</u>, not agencies, must resolve issues of statutory interpretation. This impacts the disposition of Abdulla's case because, in addition to overruling <u>Chevron</u>, the Court determined that the framework of <u>Brand X</u>, which compels courts to afford binding deference to an agency's

---

[9] In <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 843–44 (1984), the Supreme Court held that an agency's construction of a statute it administers is entitled to deference, so long as the statute is ambiguous and the agency's construction is permissible.

19

statutory interpretation even when pre-existing judicial precedent holds otherwise, "is the antithesis of the time honored approach the APA prescribes." Loper Bright 603 U.S. at 399; see also id. at 438 (Gorsuch, J., concurring) (observing that Brand X is "just one example" of the "bad . . . problem" caused by Chevron deference).

The Supreme Court's opinion in Loper Bright guides us in our review on remand, leading us to conclude that the APA does not permit us simply to defer to the interpretation of § 1432 that the BIA adopted in Baires-Larios and Douglas, as the Solicitor General advocated in her brief. Instead, we must consider independently whether our precedent in Jordon and Bagot continues to bind us, or whether there is some legal basis for departing from our prior determinations.

Abdulla claims that we should set aside Jordon and Bagot in favor of the view adopted by the BIA in Baires-Larios and Douglas because the BIA's view is consistent with what Abdulla contends is "the unambiguous reading of the statutory text." Abdulla 2d Supp. Br. 2. Upon review, we disagree.

We are bound by the ordinary meaning of the words Congress has chosen. INS v. Cardoza-Fonseca, 480 U.S. 421, 431 (1987). Yet the term "when" has several ordinary meanings, and two of them — a temporal sense and a conditional sense — reasonably could apply in this case. A term is ambiguous "if it is subject to reasonable alternative interpretations," Taylor v. Cont'l Grp. Change in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir. 1991), considering "the language itself, the specific context in which that language is used, and the broader context of the statute as

20

a whole," <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 341 (1997) (citations omitted).

The Solicitor General observed in her brief that "the statute is ambiguous with respect to the key interpretive question" in this case. Solicitor Gen. Br. 9. We agree that the text is ambiguous, and our review of the statute in context does not eliminate the ambiguity, particularly because "when" is an undefined term and no other provision conflicts with or becomes superfluous under either of its two reasonable meanings. In <u>Douglas</u>, the BIA conducted a helpful analysis of the word "when" in § 1432(a)(3), taking into account the interpretive case law and the statute's legislative history. 26 I. & N. Dec. at 199–200. Implicitly acknowledging that our Court's interpretation as set forth in <u>Jordon</u> and <u>Bagot</u> is reasonable, the BIA ultimately concluded that "when" in § 1432(a)(3) "is ambiguous." <u>Id.</u> at 201. Although we are not required to defer to the BIA's analysis, we view it as persuasive in considering the issue of ambiguity here.

Abdulla contends that § 1432(a)(3)'s "when" is unambiguous because Congress could have chosen to use the word "after" to reflect a temporal requirement instead of the more open-ended "when," so the word choice reveals that Congress did not intend a sequencing requirement. <u>See</u> Abdulla 1st Supp. Br. 6. But this argument cuts both ways, as Congress also could have chosen to use "if" rather than "when." Having chosen neither, this argument does not clarify the intended meaning of the word that Congress did choose. Given the ambiguous ordinary meaning of the term "when," the absence of a statutory definition, and the lack of clarity after considering the statutory context, we conclude that "when" is ambiguous in § 1432(a)(3) and therefore reject

Abdulla's suggestion that we may decide this case based on an "unambiguous reading of the statutory text." Id. at 2.

Given this ambiguity, we next consider whether Abdulla has presented persuasive grounds to diverge from our precedential decisions in Jordon and Bagot. Abdulla contends that we need not adhere to Jordon and Bagot because, in his view, they are not controlling. He argues that those opinions did not provide a "reasoned consideration" of the statutory text of § 1432(a)(3) and therefore do not bind us. Abdulla 2d Supp. Br. 1 (quoting U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 24 (1994)).

In Bagot, we interpreted the meaning of the phrase "legal custody" in § 1432(a)(3). We accepted the parties' view that the term "when" in § 1432(a)(3) was used in the temporal, sequential sense. 398 F.3d at 257. But we merely adopted a concession; we did not analyze the term. The meaning of "when" did not receive our "full and careful consideration," and it was "peripheral" to the holding concerning the meaning of "legal custody." See In re McDonald, 205 F.3d 606, 612 (3d Cir. 2000) (quoting Sarnoff v. Am. Home Prods. Corp., 798 F.2d 1075, 1084 (7th Cir. 1986). Indeed, our adoption of the parties' concession about the meaning of "when" "could [be] deleted without seriously impairing the analytical foundations of the holding" of Bagot. Id. (quoting Sarnoff, 798 F.2d at1084). Our adoption of the parties' concession in Bagot as to the meaning of "when" was dictum. We therefore agree with Abdulla that we are not bound by it.

Our opinion in Jordon, however, is different from Bagot. Jordon squarely presented the question we face today — the meaning of "when" in § 1432(a)(3). We concluded in

22

Jordon that we did not need to "labor over the proper construction of § 1432(a)(3)" because Bagot "set[] forth the controlling interpretation" of that provision. Jordon, 424 F.3d at 329. Our Jordon opinion took the view that Bagot made it "crystal clear" that § 1432(a)(3) requires that the parent be "naturalized after a legal separation." Id. at 330 (emphasis omitted).

Abdulla protests that Jordon is not binding because it erroneously embraced Bagot's dictum as controlling. Abdulla 1st Supp. Br. 8. Yet while we did not provide the exhaustive analysis of the meaning of the term "when" that Abdulla would prefer, it is apparent that our holding in Jordon cannot be overlooked as dictum: our interpretation of the term "when" was dispositive to the case and cannot "[be] deleted without seriously impairing the analytical foundations of the holding." McDonald, 205 F.3d at 612 (quoting Sarnoff, 798 F.2d at 1084); see also United States v. Mallory, 765 F.3d 373, 381 (3d Cir. 2014) (defining dictum as a statement that "served no part in the analysis" and can be deleted without substantially impairing the opinion's reasoning). Our ruling in Jordon as to the meaning of "when" in § 1432(a)(3) is therefore binding.

Under Third Circuit I.O.P. 9.1, we must apply our holding in Jordon. Abdulla does not dispute that his derivative citizenship claim fails under Jordon because his parents separated after his father became naturalized. See Jordon, 424 F.3d at 330. Absent a contrary decision on en banc review or clear guidance from the Supreme Court on the meaning of "when" in § 1432(a)(3), we will follow Jordon. See Karns, 879 F.3d at 514–15. Thus, upon remand and after careful consideration, we once again will deny Abdulla's derivative citizenship claim as foreclosed by our precedent.

23

## VII.

For the foregoing reasons, we will dismiss the petition for review in part for lack of jurisdiction and in part for failure to exhaust administrative remedies, and deny it in remaining part because Abdulla's claims lack merit.